UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

|  |  |  |
|---|---|---|
| TYLER TECHNOLOGIES, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 4:20-cv-00173-TWP-DML |
| LEXUR ENTERPRISES INC., ROBERT FRY, JIMMY DAVIS, JOE THORNSBERRY, AND JOHN DOES 1-100 | ) ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANT LEXUR ENTERPRISES INC.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Lexur Enterprises, Inc. ("Lexur"), by counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully requests that the Court dismiss Plaintiff Tyler Technologies, Inc.'s ("Tyler") claims against it. In support of this Motion, Lexur states:

## I. INTRODUCTION

Prior to 2020, Tyler – the self-described "largest company in the nation that focuses solely on providing integrated software and technology services to the public sector" – enjoyed significant market share for public contracts for county-level property assessment services in Indiana. Lexur, however, has recently began making inroads into Indiana due to dissatisfaction in certain counties with Tyler's services. Tyler has responded by filing a Complaint alleging a grand "conspiracy" by Lexur, its principal officer, former Tyler employees, and certain "John Doe"

1

Defendants to harm Tyler.[1]  Lexur's efforts to compete with its larger competitor have certainly been fair, if opportunistic.  What those actions have not been, however, is actionable as civil claims.

Tyler has asserted claims against Lexur for:  (1) violation of Section 1 of the Sherman Antitrust Act ("Sherman Act"); (2) violation of Indiana's Antitrust Act; (3) tortious interference with contractual relationships; (4) tortious interference with business relationships; and (5) civil conspiracy.  The allegations set forth in Tyler's Complaint fail to state a claim under any of these five theories.

As set forth in greater detail below, both Tyler's federal and state antitrust claims should be dismissed because they fail to state an antitrust injury.  Instead, Tyler's Complaint alleges pro-competitive effects resulting from the alleged conspiracy – namely lower bid prices and the entry of a new competitor to the marketplace.  Tyler's tortious interference claims are also subject to dismissal because Tyler's own allegations demonstrate that Lexur's alleged actions were taken in furtherance of its intent to compete with Tyler in the marketplace and lack the required element of illegality.  Finally, civil conspiracy is not a stand-alone claim.

Accordingly, all five of Tyler's claims against Lexur should be dismissed.

---

[1] It seems clear from the Complaint that the "John Doe" Defendants are not parties unknown to Tyler.  Rather, they are the counties themselves and certain unnamed county employees.  Rather than put itself in the awkward position of naming its own customers as Defendants, Tyler has instead named them as "John Doe" Defendants.  Such a practice is frowned upon in the Seventh Circuit and Lexur requests that the Court examine the naming of these John Doe Defendants by Tyler.  *See Doe v. Blue Cross & Blue Shield United of Wisconsin,* 112 F.3d 869, 872 (7th Cir. 1997) ("The use of fictious names is disfavored, and the judge has an independent duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in federal courts.").

## II.  BACKGROUND FACTS

Tyler alleges that it is "the largest software company in the nation that focuses solely on providing integrated software and technology services to the public sector."  (Complaint, ¶ 13). Lexur is a "regional competitor of Tyler" that, prior to the acts alleged in the Complaint, confined its appraisal services "almost exclusively to Ohio" according to the Complaint.  (*Id.* at ¶¶ 2, 14). Tyler further alleges that, prior to the acts alleged in the Complaint, Lexur did not perform appraisal services in Indiana.  (*Id.*).

The alleged acts at issue relate to awards of "cyclical assessment" contracts for real property assessment in the Indiana counties of Dearborn, Floyd, Jefferson, Ripley, and Switzerland.  (*Id.* at ¶¶ 40-77).  Tyler originally secured the cyclical assessment contracts for these counties for the 2018 to 2022 reassessment period.  (*Id.* at ¶ 27).  Tyler goes on to allege that Lexur and the other Defendants engaged in a complex "conspiracy" to convince the foregoing counties to rebid their cyclical assessment contracts early and to ensure that Lexur was the winning bidder for each of the contracts.  (*Id.* at ¶¶ 40-73). The sole purpose of this alleged "conspiracy" was to secure those contracts with those counties "for Lexur's benefit." (*Id*. at ¶ 2).

According to Tyler's own allegations, Lexur's alleged actions resulted in the five counties at issue receiving bids from Lexur that were *lower* than Tyler's bids.  (*Id.* at ¶ 74)("Moreover, since the 2017 Tyler Contracts are publicly available, it is not at all surprising that ***Lexur's proposed pricing was less than the pricing in the 2017 Tyler Contracts***…")(emphasis added). Tyler has further alleged that Lexur's alleged activities resulted in a new entrant to the Indiana real estate assessment market – Lexur.  (Complaint, ¶ 14).

### III.   STANDARD OF REVIEW

When reviewing a 12(b)(6) motion, the Court takes all well-pleaded allegations in the complaint as true and draws all inferences in favor of the plaintiff. *Bielanski v. Cnty. of Kane,* 550 F.3d 632, 633 (7th Cir.2008) (citations omitted).  However, "[t]he tenant that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

Additionally, the allegations must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp,* 499 F.3d 629, 633 (7th Cir.2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.,* 556 F.3d 575, 580 (7th Cir.2009) (citations omitted). To be facially *plausible,* the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 556 U.S. at 678 (2009).

### IV.   ARGUMENT

#### A. TYLER FAILS TO ALLEGE AN ANTI-TRUST INJURY NECESSARY TO STATE A CLAIM UNDER SECTION 1 OF THE SHERMAN ACT

To properly assert a claim under Section 1 of the Sherman Act, as Tyler has attempted to plead in Count I of its Complaint, "a plaintiff must allege that he or she suffered 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *Wallace v. Free Software Foundation, Inc.*, No. 1:05-cv-0618, 2006 WL 2038644 at * 2 (S.D. Ind. March 20, 2006)(quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 486 (1977)).   "Injury in fact establishes standing under Article III of the

Constitution…Antitrust injury is a different beast." *Chicago Prof. Sports, Ltd. Partnership v. National Basketball Ass'n*, 961 F.2d 667, 669 (7th Cir. 1992).

"To state an antitrust injury, a plaintiff must allege an anticompetitive injury that flows from defendant's actions and that the antitrust laws were intended to prevent." *Chicago Studio Rental, Inc. v. Illinois Dept. of Commerce*, 940 F.3d 971, 978 (7th Cir. 2019). The alleged injury must either reduce output or raise prices to consumers. *James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 399 (7th Cir. 2006). "The antitrust-injury doctrine was created to filter out complaints by competitors and others who may be hurt by productive efficiencies, higher output, and lower prices, all of which the antitrust laws are designed to encourage." *United States Gypsum Co. v. Indiana Gas Co., Inc.,* 350 F.3d 623, 627 (7th Cir. 2003).

Tyler has failed to allege an anti-trust injury and, as a result, Count I of its Complaint should be dismissed. Tyler alleges that it is "the largest software company in the nation that focuses solely on providing integrated software and technology services to the public sector." (Complaint, ¶ 13). Tyler alleges that Lexur is a "regional competitor of Tyler" and that, prior to the acts alleged in the Complaint Lexur's appraisal services were confined primarily to Ohio. (*Id.* at 14). Tyler further alleges that, prior to the acts alleged in the Complaint, Lexur did not perform appraisal services in Indiana. (*Id.*).

The acts at issue relate to awards of "cyclical assessment" contracts for real property assessment in the Indiana counties of Dearborn, Floyd, Jefferson, Ripley, and Switzerland. (*Id.* at ¶¶ 25-27). Tyler originally secured the cyclical assessment contracts for these counties for the 2018 to 2022 reassessment period. (*Id.* at ¶ 27). Tyler goes on to allege that Lexur and Defendant Fry engaged in a complex "conspiracy" to convince the foregoing counties to rebid their cyclical assessment contracts early and to ensure that Lexur was the winning bidder for each of the

contracts. (*Id.* at ¶¶ 40-73). Tyler's allegations are untrue and, were there valid claims pled against Lexur, Lexur would set about disproving them. For the purposes of Tyler's Sherman Act claim, however, what is important is Tyler's allegations regarding the result of the alleged conspiracy.

According to Tyler's own allegations, Lexur's alleged actions resulted in the six counties at issue receiving bids from Lexur that were *lower* than Tyler's bids. (*Id.* at ¶ 74)("Moreover, since the 2017 Tyler Contracts are publicly available, it is not at all surprising that ***Lexur's proposed pricing was less than the pricing in the 2017 Tyler Contracts***…")(emphasis added). Where an alleged conspiracy results in lower prices to consumers, no antitrust injury exists. *James Cape & Sons Co.*, 453 F.3d at 399 (affirming district court's dismissal of Section 1 Sherman Act claims due to failure to plead antitrust injury). Tyler has further alleged that Lexur's activities resulted in a new entrant to the Indiana real estate assessment market – Lexur. (Complaint, ¶ 14). That allegation not only fails to allege an anti-competitive injury, but instead, suggests a pro-competitive result. *See Chicago Studio Rental, Inc.*, 940 F.3d at 978 (noting that the alleged entrant of a new competitor to the market was pro-competitive and undercut the plaintiff's allegation of anti-trust injury.).

The Seventh Circuit's opinion in *Chicago Studio Rental, Inc.* provides guidance in this case. In the case, the operator of the only film studio in Chicago sued three Illinois state actors responsible for promoting the Illinois film industry, alleging the defendants wrongfully steered state incentives to the plaintiff's new competitor. These claims included an antitrust claim under Section 1 of the Sherman Act. 940 F.3d at 974-75. The new studio (Cinespace) eventually had 24 times the floor space of the original studio (Chicago Studio), causing Chicago Studio to lose significant market share and profits. *Id.* at 975. The district court dismissed Chicago Studio's Sherman Act claims, and the studio appealed. *Id.* at 976-77.

The Seventh Circuit affirmed the district court's dismissal, finding that "[a]t best, [the studio] has pleaded an injury to itself, not an anticompetitive injury to the market." *Id*. at 978. The complaint alleged the following injuries: (1) decrease in the studio's share of the market; (2) the studio's inability to compete in the market; (3) a reduction in competition; and (4) an increase in transactional costs to produce films in Chicago. *Id*. The first two injuries were suffered only by the studio itself, while the studio could not plausibly argue a reduction in competition by alleging that a new competitor entered the market. *Id*. Finally, the studio provided no justification other than the conclusory statement that transactional costs increased. *Id*.

Like the film studio in *Chicago Studio Rental, Inc.*, Tyler has failed to allege an anti-trust injury. Tyler has only pleaded injuries to itself rather than an anticompetitive injury to the market. To the extent Tyler has alleged damage to the market, the opposite is actually true; any alleged conspiracy by the Defendants resulted in the entry of a new competitor into the Indiana market and *lower* bids being made for cyclical reassessment contracts. As a result, Tyler's Count I of Tyler's Complaint should be dismissed with prejudice.

### B. THE INDIANA ANTI-TRUST ACT IS MODELED ON THE SHERMAN ACT AND THE FAILURE TO ALLEGE ANTI-TRUST INJURY IS SIMILARLY FATAL TO THIS CLAIM

As should Count II**.** Count II of Tyler's Complaint alleges violations of the Indiana Antitrust Act, IND. CODE § 24-1-2-1 *et seq*. The Indiana Antitrust Act is patterned after the Sherman Antitrust Act and therefore, the Sherman Act's standards are applied to Indiana Antitrust Act claims. *See Gateway Contracting Services, LLC v. Sagamore Health Network, Inc.*, IP 01-1714, 2002 WL 731686 at *14 (S.D. Ind. March 20, 2002); *Diech-Kiebler v. Bank One*, No. 404-cv-00005, 2005 WL 2428210 at * 6 (S.D. Ind. Sept. 30, 2005). "Accordingly, one of the elements that must be shown for the maintenance of an anti-trust or restraint-of-trade claim federally and at Indiana law is antitrust injury or competitive harm." *Diech-Kiebler,* 2005 WL 24228210 at * 6.

7

As discussed in Section A *supra*, Tyler has failed to allege an antitrust injury. Instead, its own pleadings demonstrate that Lexur's alleged conduct had a pro-competitive effect. Accordingly, like its Sherman Act claim in Count I, Tyler's Indiana Antitrust Act claim in Count II should also be dismissed with prejudice for failure to state a claim.

### C. LEXUR'S ALLEGED ACTS WERE CARRIED OUT IN THE FURTHERANCE OF COMPETITION

Tyler's Complaint alleges two different claims based on allegations that Lexur tortiously interfered with Tyler: (1) tortious interference with contract (Count III); and (2) tortious interference with business relationships (Count IV). (Complaint, ¶¶ 100-112). Both counts fail to allege the necessary elements to properly plead either tortious interference claim, specifically the "absence of justification" element.

To state a claim for tortious interference with contract, the plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the existence of the contract; (3) the defendant's intentional inducement of breach of the contract; (4) the absence of justification; and (5) damages resulting from the defendant's wrongful inducement of the breach. *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1272 (Ind. Ct. App. 2000).[2] The elements of a claim for tortious interference with business relationships are the same as tortious interference with contract, except tortious interference with a busines relationship: (1) does not require a showing of the existence of a valid contract; and (2) does require a showing of illegality. *Furno v. Citizens Ins. Co. of America*, 590 N.E.2d 1137, 1140 (Ind. Ct. App. 1992).

"A plaintiff must state more than a mere assertion that the defendant's conduct was unjustified" to satisfy the lack of justification element. *Id*. Rather, "the breach must be malicious and exclusively directed to the injury and damage of another." *Id*. (quoting *Winkler v. V.G. Reed*

---

[2] Tyler has elected not to attach the contracts at issue to the Complaint.

*& Sons, Inc.*, 619 N.E.2d 597, 600-01 (Ind. Ct. App. 1993)). This has been referred to as "disinterested malevolence." *Flintridge Station Associates v. American Fletcher Mortg. Co.*, 761 F.2d 434, 441 (7th Cir. 1985). Indiana courts have held that competition is a legitimate interest that establishes justification for purposes of a tortious interference claim. *Konecranes, Inc. v. Davis*, No. 1:12-cv-01700-JMS-MJD, 2013 WL 1566326 at *3 (S.D. Ind. 2013). "One's privilege to engage in business and to compete with others implies a privilege to induce third persons to do their business with him rather than with his competitors." *Harvest Life Ins. Co. v. Getche*, 701 N.E.2d 871, 877 (Ind. Ct. App. 1988).

Tyler's Complaint makes it clear that Lexur's actions did not involve "disinterested malevolence" but rather furthered Lexur's intent to enter the Indiana real estate assessment market and compete with Tyler. Tyler acknowledges that it and Lexur are competitors in the real estate assessment market. (Complaint, ¶ 14). Tyler alleged that Lexur and the Defendants interfered with Tyler's contracts by encouraging the Counties to issue out-of-cycle requests for bids "designed to eliminate competition, to terminate the Counties' 2017 Tyler Contracts, [and] ***to award the cyclical reassessment contracts to Lexur*** as the sole bidder." (Complaint, ¶¶ 88, 95, 103, 109)(emphasis added).

Throughout its Complaint, Tyler makes clear that Lexur was motivated by an intent to obtain new cyclical reassessment contracts by alleging that the Defendants undertook actions to ensure "that Lexur would be granted the bids no matter what" and instituted actions for the purpose of "securing those clients for Lexur's benefit instead" of Tyler's. (Complaint, ¶ 2). Tyler further alleges that the Defendants acted to "maximize the likelihood of Lexur obtaining such contracts." (Complaint, ¶ 7). These stated reasons for Lexur's activities show that Lexur's actions were not "exclusively directed to the injury and damage" of Tyler. *Morgan Asset*, 736 N.E.2d at 1272.

9

Rather, Lexur's alleged interference with the 2017 Tyler Contracts was for Lexur's own competitive gain. Indiana courts have routinely held that this cannot form the basis of a tortious interference claim. *Konecranes*, 2013 WL 1566326 at *3; *Harvest Life*, 701 N.E.2d at 877.

The facts in this case are similar to *Konecranes, Inc. v. Davis*. In that case, the defendant, who had served as plaintiff's subcontractor in the past, while also competing for customers with the plaintiff, hired a former employee of the plaintiff. 2013 WL 1566326 at *1. Shortly after hiring the employee, two of the plaintiff's customers cancelled their contracts with the plaintiff and signed contracts with the defendant. *Id*. The plaintiff alleged that the employee "intentionally induced [the customers] to cancel and/or not renew" their contracts with the plaintiff. *Id*. at *2. The plaintiff alleged that there was no justification for this action and asserted a tortious interference claim. *Id*.

The court disagreed, dismissing the plaintiff's claim. *Id*. The court noted that the allegation that the defendant lacked justification "conflicts with other allegations in the Complaint where [plaintiff] alleges that" the defendant induced the customers to breach their contracts "so that [the defendant] could gain their business." *Id*. at *3. Because the defendants alleged actions were "taken in the spirit of business competition," the actions were justified under Indiana law. *Id*. at *3.

That is the case here. Tyler alleges that Lexur tortiously interfered with Tyler's contracts and business relationships to induce those Counties "to award the cyclical reassessment contracts to Lexur." (Complaint, ¶¶ 103, 109). These actions were taken to Lexur's competitive benefit. (Complaint, ¶ 2). Those actions are justified under Indiana law and therefore cannot form the basis of any tortious interference claim. *Konecranes*, 2013 WL 1566326 at *3; *Harvest Life*, 701 N.E.2d at 877 (discussing the "privilege to induce third persons to do their business with him rather than

10

with his competitors."). Accordingly, this Court should dismiss Counts III and IV of Tyler's Complaint against Lexur.

### D. TYLER HAS FAILED TO PLAUSIBLY ALLEGE LEXUR ACTED ILLEGALLY

Like its claim for tortious interference with contract, Tyler's claim for tortious interference with business relationships (Count IV) fails because the alleged tortious interference occurred in furtherance of competitive activity by Lexur. However, Count IV of Tyler's Complaint also fails for an additional reason; Tyler's Complaint fails to allege any illegal activity upon which it could base a tortious interference with business relationships claim.

As referenced, *supra*, a claim for tortious interference with business relationships requires an additional showing that "the defendant acted illegally in his interference." *Furno v. Citizens Ins. Co. of America*, 590 N.E.2d 1137, 1140 (Ind. Ct. App. 1992). Although there is no "definition or test" to prove what constitutes "illegal conduct," merely wrongful conduct such as defamation cannot satisfy this element. *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 278 (7th Cir. 2016) (citing *Levee v. Beeching*, 729 N.E.2d 215, 222-23 (Ind. Ct. App. 2000)).

Tyler attempts to meet the illegality requirement for a tortious interference with business relationships claim by alleging that Lexur and the other Defendants acted illegally by violating federal and Indiana antitrust law. (Complaint, ¶ 110). However, as discussed, in Sections A and B *supra*, Tyler has not pled valid claims against Lexur for any antitrust violations. Because Tyler's tortious interference with business relationships claim relies upon its claims for antitrust violations, which fail, Tyler cannot properly assert a tortious interference with business relationships claim. *See Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003) (finding that plaintiff who failed to state a claim for a violation of the blacklisting statute also failed to claim tortious interference with business relationships claim).

11

Furthermore, notably absent from Tyler's Complaint is any allegation that Lexur acted illegally under Ind. Code § 6-1.1-4-18.5, which sets forth the procedure for awarding real property assessment contracts. Nor does Tyler allege that the contracts between Lexur and the Counties lack the requisite terms under Ind. Code § 6-1.1-4-19.5. Despite specific statutes governing the procurement of contracts at issue in this case, Tyler has not alleged any violations of those statutes. That is because Lexur has not acted illegally in the procurement or execution of its contracts. Lexur and the Counties complied with Indiana statutory procedure for the award of assessment contracts, making any claim by Tyler for tortious interference with business relationships invalid.

Tyler can make no claim of illegality on the part of Lexur other than relying upon its failed antitrust claims to allege that Lexur acted illegally for the purposes of making its tortious interference with business relationships claim. Accordingly, Tyler's Complaint has not alleged any illegal conduct on the part of Lexur to make its claim. Count IV of Tyler's Complaint against Lexur should therefore be dismissed.

### E. Civil Conspiracy is not an Independent Cause of Action

A civil conspiracy is a combination of two or more persons who engage in a concerted action to accomplish an unlawful purpose or to accomplish some lawful purpose by unlawful means. *Birge v. Town of Linden*, 57 N.E.3d 839, 845 (Ind. Ct. App. 2016). Civil conspiracy is not an independent cause of action, however. *Id*. "[A]n allegation of civil conspiracy is 'just another way of asserting a concerted action in the commission of a tort.'" *Id*. (quoting *Boyle v. Anderson Fire Fighters Assoc. Local 1262*, 497 N.E.2d 1073, 1079 (Ind. Ct. App. 1986)).

Tyler's civil conspiracy claim relies upon Lexur's alleged violation of federal and state antitrust laws, as well as its tortious interference claims. (Complaint, ¶ 119). As established throughout this brief, Tyler has failed to properly allege any of these torts in its Complaint. Without a valid assertion of any tort claim, Tyler has no basis upon which to make its civil conspiracy

12

claim: "Civil conspiracy is not an independent cause of action." *Birge*, 57 N.E.3d at 846. Because Tyler's previous claims fail, Tyler has failed to state a claim for civil conspiracy. This Court should therefore dismiss Count VI of Tyler's Complaint.

## V. CONCLUSION

For the foregoing reasons, Defendant Lexur Enterprises, Inc. respectfully requests that the Court dismiss the claims against Lexur pursuant to Federal Rule of Civil Procedure 12(b)(6) and for all other proper relief.

Respectfully Submitted,

LEWIS WAGNER, LLP


/s/A. Richard M. Blaiklock
A. RICHARD M. BLAIKLOCK
AARON D. GRANT
LEWIS WAGNER, LLP
501 Indiana Avenue, Suite 200
Indianapolis, IN  46202
Phone:  (317) 237-0500
Fax:  (317) 630-2790
rblaiklock@lewiswagner.com
agrant@lewiswagner.com
*Attorneys for Lexur Enterprises, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on September 29, 2020, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

| | |
|---|---|
| Ann O. McCready<br>Vivek Randle Hadley<br>TAFT STETTINIUS &<br>HOLLISTER LLP<br>One Indiana Square<br>Suite 3500<br>Indianapolis, IN 46204<br>amccready@taftlaw.com<br>vhadley@taftlaw.com | Douglas B. Bates<br>Chelsea R. Stanley<br>STITES & HARBISON PLLC 323<br>East Court Avenue<br>Jeffersonville, IN 47130<br>dbates@stites.com cstanley@stites.com |
| Jennifer J. Nagle<br>Michael R. Creta<br>K&L GATES LLP<br>State Street Financial Center<br>One Lincoln Street<br>Boston, MA 02111<br>jennifer.nagle@klgates.com<br>michael.creta@klgates.com | R. Jeffrey Lowe<br>KIGHTLINGER & GRAY, LLP<br>Bonterra Building, Suite 200<br>3620 Blackiston Boulevard<br>New Albany, IN 47150<br>jlowe@k-glaw.com |
| John H. Haskin<br>Samuel Mark Adams<br>JOHN H. HASKIN &<br>ASSOCIATES, LLC<br>255 North Alabama<br>Second Floor<br>Indianapolis, IN 46204<br>jhaskin@jhaskinlaw.com<br>sadams@jhaskinlaw.com | |

        /s/A. Richard M. Blaiklock
        A. RICHARD M. BLAIKLOCK

**LEWIS WAGNER, LLP**
501 Indiana Avenue, Suite 200
Indianapolis, IN 46202-6150
Phone:   317-237-0500
Fax:       317-630-2790
rblaiklock@lewiswagner.com