UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

TYLER TECHNOLOGIES, INC.,

    Plaintiff

v.

                                                      CASE NO.:   4:20-cv-00173-TWP-DML

LEXUR ENTERPRISES INC., ROBERT FRY,
JIMMY DAVIS, JOE THORNSBERRY, and
JOHN DOES 1-100s,

    Defendants

---

### DEFENDANT JIMMY DAVIS' BRIEF IN SUPPORT OF HIS MOTION FOR PARTIAL DISMISSAL OF THE PLAINTIFF'S COMPLAINT

---

Defendant Jimmy Davis ("Davis"), by counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby submits this Memorandum in support of his Motion to Dismiss Plaintiff Tyler Technologies Inc.'s ("Plaintiff") following claims against him: (1) violation of the Sherman Anti-Trust Act, 15 U.S.C. § 1, *et seq.*; (2) violation of the Indiana Anti-Trust Act, Ind. Code § 24-1-2-1, *et seq.*; (3) tortious interference with contractual relationships; and (4) tortious interference with business relationships. In support of his Motion, Davis states as follows:

    **I.    PERTINENT FACTUAL BACKGROUND**

Plaintiff is the "largest software company in the nation that focuses solely on providing integrated software and technology services to the public

1

sector," with a large market presence in Indiana where it "provides services to over twenty Indiana counties." (Complaint, ¶ 13.) Following a statutorily-required public bidding process, Dearborn, Floyd, Jackson, Jefferson, Ripley, and Switzerland counties in Indiana (collectively, the "Counties") awarded contracts to the Plaintiff to provide support and advice in connection with the County Assessor's statutory requirement to physically inspect and reassess the value of all real property within the county over the course of four years— i.e., cyclical reassessment. (Complaint, ¶¶ 25-29.) The cyclical reassessment period governed by the Plaintiff's contracts with the Counties was from May 1, 2018 to April 30, 2022. (Complaint, ¶ 27.) The contracts were terminable at will by the Counties or the Indiana Department of Local Government Finance at any time in the event a county made the decision that termination was *in the county's best interest*. (Complaint, ¶¶ 29-31)(emphasis added). A county could terminate services by delivery to the Contractor of a Termination Notice at least thirty days prior to the termination effective date specifying the extent to which performance of services under such termination becomes effective. *Id*.

During the contract period, Plaintiff employed Davis as a Senior Appraisal Projects Supervisor and in that capacity Davis had responsibility over Plaintiff's cyclical assessment service contracts with the Counties. (Complaint, ¶¶ 16, 33.) Plaintiff alleges Davis used his relationships with the county assessors and decision-makers to encourage them to rebid the cyclical

2

reassessment contracts and Jefferson, Ripley, Switzerland, Floyd and Dearborn Counties rebid those contracts. (Complaint, ¶¶ 33-62.)  It is Plaintiff's theory that Davis undertook those actions to assist Co-Defendant, Lexur Enterprises, Inc. ("Lexur")—a competitor of Tyler for whom Davis planned to seek employment—in securing the rebid of the contracts. (Complaint, ¶¶ 16, 25-27, 64-65.) While Plaintiff did not, and cannot, allege the rebidding process failed to comply with Indiana's public bidding requirements with regard to advertising (because it did), Plaintiff asserts it did not monitor the rebidding cycle and, as a result, did not bid on the new contracts as it did not find out about the rebidding in with "sufficient time or context to submit a bid." (Complaint, ¶¶ 33-65.)  Meanwhile, Lexur's bids were lower than Plaintiff's contracted price. (Complaint, ¶ 64)("Moreover, since the 2017 Tyler Contracts are publicly available, it is not at all surprising that ***Lexur's proposed pricing was less than the pricing in the 2017 Tyler Contracts***…")(emphasis added).

According to Plaintiff's Complaint, while some of the counties in question sent notice of termination of their at-will contracts with Plaintiff (presumably to enter into the lower cost contracts with Lexur) none of the counties in question have effectively entered a contract with Lexur—specifically: (1) Dearborn decided to issue a second rebid for which Tyler's bid is currently under consideration; (2) Floyd determined its contract with Tyler would remain in effect; and (3) Plaintiff is in the dispute resolution process defined

3

in its contracts with Jefferson, Ripley, and Switzerland counties. (Complaint, ¶¶ 66-77.)

As a result of the aforementioned conduct, Plaintiff asserted the following claims against Davis: ((1) violation of the Sherman Anti-Trust Act, 15 U.S.C. § 1, *et seq.*; (2) violation of the Indiana Anti-Trust Act, Ind. Code § 24-1-2-1, *et seq.*; (3) tortious interference with contractual relationships; and (4) tortious interference with business relationships; (5) breach of the duty of loyalty; and (6) civil conspiracy.

Davis is seeking dismissal of the first four of these claims and will provide more facts as necessary

## II.  LEGAL STANDARD

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. The plausibility standard requires more than a mere possibility that a defendant acted unlawfully. *Id*.

The Court takes all well-pleaded allegations in the complaint as true and draws all inferences in favor of the plaintiff. *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 633 (7th Cir. 2008)(citations omitted).  However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citation omitted).

### III. ARGUMENT

#### A. PLAINTIFF FAILS STATE A CLAIM UNDER SECTION 1 OF THE SHERMAN ACT

1. <u>Plaintiff Fails to Allege an Anti-Trust Injury Necessary to State a Claim under Section 1 of the Sherman Act</u>

To plausibly assert a claim under Section 1 of the Sherman Act, "a plaintiff must allege he or she suffered 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Wallace v. Free Software Foundation, Inc.*, No. 1:05-cv-0618, 2006 WL 2038644 at *2 (S.D. Ind. March 20, 2006)(quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 486 (1977)). "Injury in fact establishes standing under Article III of the Constitution...Antitrust injury is a different beast." *Chicago Prof. Sports, Ltd. Partnership v. National Basketball Ass'n*, 961 F.2d 667, 669 (7th Cir. 1992).

"To state an antitrust injury, a plaintiff must allege an anticompetitive injury that flows from defendant's actions and that the antitrust laws were intended to prevent." *Chicago Studio Rental, Inc. v. Illinois Dept. of Commerce*, 940 F.3d 971, 978 (7th Cir. 2019). The alleged injury must either reduce output or raise prices to consumers. *James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 399 (7th Cir. 2006). "The antitrust-injury doctrine was created to filter out complaints by competitors and others who may be

5

hurt by productive efficiencies, higher output, and lower prices, all of which the antitrust laws are designed to encourage." *United States Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 627 (7th Cir. 2003).

Assuming the facts as alleged are true (which Davis disputes), Plaintiff's complaint is that the acts of Davis resulted in: (1) Tyler's competitor, Lexur, entering the Indiana real estate assessment market (where before Plaintiff was the dominant force in the market); and (2) the counties receiving bids from Plaintiff's competitor that were *lower* than the pricing of Tyler's contracts. (Complaint, ¶¶ 14, 74)("Moreover, since the 2017 Tyler Contracts are publicly available, it is not at all surprising that ***Lexur's proposed pricing was less than the pricing in the 2017 Tyler Contracts***...")(emphasis added). Where an alleged conspiracy results in lower prices to consumers, no antitrust injury exists. *James Cape & Sons Co.*, 453 F.3d at 399. In this case, not only was there no anti-competitive injury but instead, there was a pro-competitive result. *See Chicago Studio Rental, Inc.*, 940 F.3d at 978 (noting that the alleged entrant of a new competitor of the market was pro-competitive and undercut the plaintiff's allegation of anti-trust injury.)

In its Motion to Dismiss, Lexur aptly details the Seventh Circuit's opinion in *Chicago Studio Rental, Inc.* and shows it provides controlling precedential weight in this case and Davis defers to, adopts and incorporates herein that analysis. 940 F.3d at 974-75.

6

In summary, Tyler failed to allege an anti-trust injury and, in actuality, complains the harm it suffered was the entry of a new competitor into the Indiana market to undercut Tyler's contracts with the Counties the contract between the Counties and Tyler. Based on the foregoing, Plaintiff's claim under Section 1 of the Sherman Act should be dismissed.

### B. PLAINTIFF FAILS TO ALLEGE AN ANTI-TRUST INJURY NECESSARY TO STATE A CLAIM UNDER THE INDIANA ANTI-TRUST ACT

To succeed on a claim under Indiana's Anti-Trust Act (or the Sherman Anti-Trust Act), Plaintiff has to prove three essential elements: (1) violation of the statute, (2) injury to a person's business or property proximately caused by the violation, and (3) actual damages. *Thompson v. Vigo Cty. Bd. of Cty. Comm'rs*, 876 N.E.2d 1150, 1151-56 (Ind. Ct. App. 2007). Because Plaintiff has failed to allege an anti-trust injury, has failed to allege Davis violated the Indiana Anti-Trust Act and has failed to allege Davis' alleged violation of the Indiana Anti-Trust Act, its claim under this Act against Davis should be dismissed with prejudice.

1. <u>Plaintiff Fails to Allege an Anti-Trust Injury Necessary to State a Claim under the Indiana Anti-Trust Act.</u>

The Indiana Antitrust Act is patterned after the Sherman Antitrust Act and therefore, the Sherman Act's standards are applied to Indiana Antitrust Act claims. *See Gateway Contracting Services, LLC v. Sagamore Health Network, Inc.*, IP 01-1714, 2002 WL 731686 at *14 (S.D. Ind. March 20, 2002);

7

*Diech-Kiebler v. Bank One*, No. 404-cv-00005, 2005 WL 2428210 at *6 (S.D. Ind. Sept. 30, 2005). "Accordingly, one of the elements that must be shown for the maintenance of anti-trust or restraint-of-trade claim federally and at Indiana law is antitrust injury or competitive harm." *Diech-Kiebler*, 2005 WL 24228210 at * 6.  Because Plaintiff failed to allege an antitrust injury and actually complains of a pro-competitive effect, Plaintiff's Indiana Antitrust Act claim should be dismissed.

> 2. <u>Plaintiff fails to Allege its Alleged Anti-Trust Injury was Proximately Caused by a Violation of Indiana's Anti-Trust Act.</u>

The Indiana Court of Appeals' opinion in *Thompson v. Vigo Cty. Bd. of Cty. Comm'rs* provides guidance in this case with regard to a plaintiff's failure to allege an injury was proximately caused by a violation of the act. 876 N.E.2d 1150, 1151-56 (Ind. Ct. App. 2007).  In that case, Thompson reached out to various Vigo county commissioners to express interest in purchasing a county highway garage that was for sale, at which time he was informed there was already a buyer for the property. *Id*.  Notwithstanding, Thompson continued his attempts to purchase the property, which were repeatedly rebuffed. *Id*.  Subsequent to these efforts, on June 26, 2004, Vigo County published a Notice of Offer to Exchange Real property. *Id*. Famco submitted the only bid in response to the Notice of Offer.  *Id*. Thompson did not bid on the real estate. *Id*.  On or about August 24, 2004, Vigo County transferred the real estate by deed to Famco.  Thompson then sued Famco, asserting Vigo County violated the statutory bidding procedures and that

8

Famco violated Indiana's antitrust law. *Id.* Specifically, Thompson argued Famco colluded with Vigo County by engaging in a scheme geared to restrain bidding and restrict free competition by sending out a Notice to Offer that was unduly restrictive so as to ensure only Famco satisfied its requirements, thereby excluding Thompson from the bidding process and forcing him to purchase more expensive property. *Id.*

The Indiana Court of Appeals upheld the circuit court's 12(b)(6) dismissal of Thompson's claims against Famco on appeal on the grounds that Thompson failed to allege, that but for the anti-trust violation, he would have gotten the bid. *Id.* at 1155 (citations omitted). Specifically, Thompson had to establish he had been harmed by the alleged violation and because he did not submit a bid in response to Vigo County's Notice to Offer, it would be difficult to prove, let alone speculate, that Thompson would have been the successful bidder but for the purported collusion between Famco and Vigo County. *Id.* However, where Thompson was arguing he was prevented from presenting a bid and therefore had to purchase additional property at a higher price, he did not expend effort to prepare a bid. Because Thompson could not establish that, but for the alleged violation of the antitrust statute, he would have been the successful bidder, he could not prove one of the three essential elements and dismissal of his claim was proper. *Id.* at 1156.

Similarly, in this case, Plaintiff acknowledges it did not bid on the cyclical assessment contract during the rebidding period and as a result could not

9

prove that but for an alleged violation of the antitrust statute, it would have been the successful bidder and dismissal of its claim is proper.

### C. PLAINTIFF FAILED TO STATE A CLAIM OF TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

"A plaintiff alleging tortious interference with a contractual relationship must establish five elements: (1) the existence of a valid and enforceable contract; (2) the defendant's knowledge of the existence of the contract; (3) the defendant's intentional inducement of the breach of the contract; (4) the absence of justification; and (5) damages resulting from the defendant's wrongful inducement of the breach." *Guinn v. Applied Composites Eng'g, Inc.*, 994 N.E.2d 1256, 1267 (Ind. Ct. App. 2013) (citing *Allison v. Union Hosp., Inc.,* 883 N.E.2d 113, 118 (Ind.Ct.App.2008) (citing *Winkler,* 638 N.E.2d at 1235)).

1. Plaintiff has not Alleged a Breach of the Contract.

Plaintiff's contracts with the counties were terminable at will. (Complaint, ¶ 31.) According to Plaintiff's Complaint, while some of the counties in question have sent Termination Notices, none of the counties thus far have actually effectively terminated their at-will contracts with Plaintiff and, as such, have not breached said contracts. (Complaint, ¶¶ 73-77, 84-85.) Therefore, Plaintiff has not properly pleaded that Davis induced the breach of any contract.

2. Even if there were a Breach of the Contracts, Plaintiff has Failed to Allege Facts Sufficient to Support the Absence of Justification

10

"A plaintiff must state more than a mere assertion that the defendant's conduct was unjustified to satisfy the lack of jurisdictional element." *Id*. Rather, "the breach must be malicious and exclusively directed to the injury and damage of another." *Id*. (quoting *Winkler v. V.G. Reed & Sons, Inc.*, 619 N.E.2d 597, 600-601 (Ind. Ct. App. 1993)). This has been referred to as "disinterested malevolence." *Flintridge Station Associates v. American Fletcher Mortg. Co.*, 761 F.2d 434, 441 (7th Cir. 1985). Indiana courts have held that competition is a legitimate interest that establishes justification for purposes of a tortious interference claim. *Konecranes, Inc. v. Davis*, No. 1:12-cv-01700-JMS-MJD, 2013 WL 1566326 at *3 (S.D. Ind. 2013). "One's privilege to engage in business and to compete with others implies a privilege to induce third persons to do their business with him rather than with his competitors." *Harvest Life Ins. Co. v. Getche*, 701 N.E.2d 871, 877 (Ind. Ct. App. 1988).

For example, in *Konecranes, Inc. v. Davis*, a service manager of Konecranes who performed work for Konecranes on various maintenance and service contracts with Nucor Sheet Metal Group ("Nucor") and Steel Dynamics Incorporated ("SDI") resigned and began working for Konecranes competitor, ICS. No. 1:12-CV-01700-JMS, 2013 WL 1566326, at *1-3 (S.D. Ind. Apr. 12, 2013). Thereafter, Nucor cancelled Purchase Orders with Konecranes and SDI did not renew and existing Purchase Order with Konecranes, instead opting to contract with ICS to perform the work. *Id*.

11

Konecranes sued ICS and its former service manager, asserting a claim of tortious interference with contractual relationship. *Id*. The Southern District of Indiana dismissed Konecranes' claim on the grounds that Konecranes failed to assert the former service managers and ICS's actions were unjustified. *Id*. While Konecranes alleged "there was no justification for [the former service manager] and ICS to interfere with those contractual relationships," this conflicted with other allegations in the Complaint where Konecranes alleged [the former service manager and ICS] induced Nucor, SDI and others to break their contracts with Konecranes so ICS could obtain their business. *Id*. Therefore, the court found that the allegations contained in the Complaint showed the former service manager and ICS "were motivated at least in part by a legitimate business interest—their own desire to secure new customers." *Id*. at *3. *See also Harvest Life Ins. Co. v. Getche,* 701 N.E.2d 871, 877 (Ind.Ct.App.1988) (relying upon Restatement (Second) of Torts § 768 (1977) in finding that tortious interference claim failed because defendant's justification for actions was business competition, and stating "[o]ne's privilege to engage in business and to compete with others implies a privilege to induce third persons to do their business with him rather than with his competitors. In order not to hamper competition unduly, the rule stated in [Section 768] entitles one not only to seek to divert business from his competitor generally but also from a particular competitor. And he may seek to do so directly by express inducement as well as indirectly

12

by attractive offers of his own goods or services") (*quoting* Comment b to Restatement (Second) of Torts § 768 (1977)).

Because the Court found that ICS's and the former service manager's alleged actions related to gaining business for ICS, taken in the spirit of business competition, constituted justification under Indiana law, the Court held they did not act exclusively to injure Konecranes and, thus, Konecranes' claim of tortious interference with contractual relationship should be dismissed as a matter of law.

Here, like in the *Konecranes* case, Plaintiff alleged facts that actually undermined Plaintiff's legally conclusory allegation that Davis acted with the exclusive purpose of injuring Plaintiff. Rather, the facts as alleged, like in *Konecranes*, show that Davis' actions were not taken exclusively to injure Plaintiff, but rather, to gain new clients for Lexur—his prospective employer. Specifically, Plaintiff's Complaint alleges that Davis' actions did not involve "disinterested malevolence" but rather furthered his intents for his prospective employer, Lexur. (Complaint, ¶¶ 2, 7, 14, 16, 88, 95, 103, 109).

Based on the foregoing, Plaintiff's claim of tortious interference with contractual relationship should be dismissed as to Davis.

### D. PLAINTIFF FAILED TO STATE A CLAIM OF TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP

The elements of an action for tortious interference with a business relationship are the same as tortious interference with contract, except tortious interference with a business relationship: (1) does not require a

13

showing of the existence of a valid contract; and (2) does require a showing of illegality. *Furno v. Citizens Ins. Co. of America*, 590 N.E.2d 1137, 1140 (Ind. Ct. App. 1992).

> 1. *Plaintiff has Failed to Plead Facts Sufficient to Support a Lack of Justification.*

For the same reasons stated above, Plaintiff's claim for tortious interference with a business relationship against Davis fails because he cannot establish Davis' actions lacked justification.

> 2. *Plaintiff has Failed to Plausibly Allege Davis Acted Illegally.*

Although there is no "definition or test" to prove what constitutes "illegal conduct," merely wrongful conduct such as defamation cannot satisfy this element. *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 278 (7th Cir. 2016)(citing *Levee v. Beeching*, 729 N.E.2d 215, 222-23 (Ind. Ct. App. 2000)). Plaintiff has not alleged any statutory violations, apart from the above-referenced Anti-Trust statutes. Because such claims must fail, Plaintiff's claim for intentional interference with business relationship must also fail.

## IV. CONCLUSION

For the foregoing reasons, Defendant Jimmy Davis, respectfully requests that the Court dismiss Plaintiff's claims under both the Federal and Indiana Anti-Trust Acts and the Interference with Contract and Interference with a Business Relationship claims against him pursuant to FRCP 12(b)(6) and for all other proper relief.

             Respectfully submitted,

             KIGHTLINGER & GRAY, LLP

         By: s/ R. Jeffrey Lowe
             R. Jeffrey Lowe, Atty# 21508-22
             KIGHTLINGER & GRAY, LLP
             Bonterra Building, Suite 200
             3620 Blackiston Boulevard
             New Albany, IN  47150
             jlowe@k-glaw.com
             Phone:  (812) 949-2300
             Fax:  (812) 949-8556
             *Counsel for Defendant,*
             *Jimmy Davis*

## **CERTIFICATE OF SERVICE**

   I hereby certify that on the **30th day of September, 2020,** a copy of the foregoing Memorandum in Support of Motion to Dismiss was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Ann O'Connor McCready
Vivek R. Hadley
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204
Email: amccready@taftlaw.com
Email: vhandley@taftlaw.com
*Counsel for Plaintiff*

Jennifer J. Nagle
Michael R. Creta
K&L GATES LLP
One Lincoln Street, State Street Financial Center
Boston, MA 02111
Email: jennifer.nagle@klgates.com
Email: michael.creta@klgates.com
*Counsel for Plaintiff*

John H. Haskin
Samuel M. Adams

JOHN H. HASKIN & ASSOCIATES
255 North Alabama Street, 2nd Floor
Indianapolis, IN 46204
Email: sadams@jhaskinlaw.com
Email: jhaskin@jhaskinlaw.com
*Attorneys for Defendant,*
*Joe Thornsberry*

A. Richard Blaiklock
Aaron D. Grant
John Trimble
LEWIS WAGNER, LLP
501 Indiana Avenue, Suite 200
Indianapolis, IN 46202
rblaiklock@lewiswagner.com
agrant@lewiswagner.com
jtrimble@lewiswagner.com
*Counsel for Lexur Enterprises, Inc*

Douglas B. Bates
Chelsea R. Stanley
STITES & HARBISON, PLLC
323 East Court Avenue
Jeffersonville, IN 47130
dbates@stites.com
cstanley@stites.com
*Counsel for Defendant, Robert Fry*

s/ R. Jeffrey Lowe
R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP

204403\60579836-1