**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | |
|---|---|
| TYLER TECHNOLOGIES, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LEXUR ENTERPRISES INC., ROBERT FRY, ) <br> JIMMY DAVIS, JOE THORNSBERRY, ) <br> AND JOHN DOES 1-100 ) <br> ) <br> Defendants. ) | Case No. 4:20-cv-00173-TWP-DML |

**DEFENDANT LEXUR ENTERPRISES INC.'S**
**REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendant Lexur Enterprises Inc. ("Lexur"), by counsel, hereby submits its Reply in Support of its Motion to Dismiss ("Motion"), and states as follows:

**INTRODUCTION**

Nowhere in Tyler Technologies, Inc. ("Tyler") 127 paragraph Complaint is there a viable claim for which it can obtain relief. The injuries alleged in Tyler's Complaint are not "antitrust injuries," as required to state a claim by both state and federal law. Tyler has failed to allege that Lexur's actions resulted in decreased output or increased consumer prices, but affirmatively alleged that Lexur's alleged conduct resulted in *lower* consumer prices. Tyler's argument that it is excused from pleading antitrust injury because Lexur engaged in bid-rigging is similarly flawed. Bid-rigging requires collusive behavior among competitors – allegations found nowhere in Tyler's voluminous Complaint. With respect to its antitrust claims, Tyler has pled itself out of Court.

Nothing in its Omnibus Opposition to Defendants' Motions to Dismiss ("Omnibus Opposition", Dkt. 58) changes that result.

Tyler's attempt to save its tortious interference claims also fails. Conduct is not "wrongful" simply because the aggrieved party claims it is. And nowhere in Tyler's Complaint are there any allegations of wrongful conduct by Lexur independent of its antitrust claims, which fail. Indiana law authorizes Lexur to pursue its own business interests without incurring liability, even where such actions aggrieve a competitor.

Tyler has not – and cannot – plead viable claims against Lexur. Accordingly, its claims should be dismissed with prejudice.

## ARGUMENT

**I.      Anti-Trust Law Is Interested in the *Results* of Competition in the Marketplace, Not the *Process***

In attempting to thwart dismissal of its Sherman Act claim, Tyler notably does not dispute that antitrust law requires an injury to consumers, not competitors. Nor can it; that is hornbook law. Nor does Tyler argue that Lexur's alleged actions resulted in consumers ***actually*** paying higher prices for appraisal services. Tyler concedes that Lexur's bids were lower than the prices the Indiana counties at issue in this litigation (the "Counties") had previously paid for Tyler's services. ("Of course Lexur's bid was the lowest…") (Omnibus Opposition, Dkt,. 58, p. 9). Instead, Tyler attempts to save its fatally flawed claim by arguing that Lexur's alleged actions harmed the bidding ***process*** and resulted in bids that may have been higher than ***hypothetical*** bids that ***could have been made*** absent the alleged procedural malfeasance. Tyler provides no legal support for its effort to create new antitrust law.

In determining whether a claim has been sufficiently pled to avoid dismissal pursuant to Fed. Rule Civ. Pro. 12(b)(6), the Court is not required to conjure hypothetical scenarios that might

result in a set of facts that could support a claim.  The United States Supreme Court has made clear that, in the context of a Sherman Act claim, the complaint must contain sufficient factual information to suggest that relief is at least possible. *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 556-57, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Tyler, however, does not provide *any* factual allegations that support a finding that consumers – rather than Tyler itself – were harmed by Lexur's alleged conduct.  Nor does Tyler provide the Court with a single authority supporting an argument that hypothetical harm, based on unpled facts, can stave off dismissal of a Sherman Act claim.  That is because that is not the law.

Tyler notes that its Complaint contains 127 paragraphs, as if length is an adequate replacement for substance.  (Omnibus Opposition, Dkt. 58, p. 7).  But even taking a fine-toothed comb to these 127 paragraphs in search of allegations that Lexur's conduct "either reduce[d] output or raise[d] prices to consumers," the Court will come up empty. *James Cape & Sons Co. v. PCC Constr .Co.*, 453 F.3d 396, 399 (7th Cir. 2006). Instead, the Court will find numerous allegations that ***Tyler*** – not the Counties or their constituents – was harmed by Lexur's alleged actions.

Although the alleged conduct may have harmed Tyler itself, antitrust law is not intended to protect Tyler's interests in maintaining its uncompetitive prices with the Counties; antitrust law actually ***discourages*** such claims. *See United States Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 627 (7th Cir. 2003) ("The antitrust-injury doctrine was created to filter out complaints by competitors . . . who may be hurt by productive efficiencies, higher output, and lower prices, all of which the antitrust laws are designed to encourage."); *Chicago Studio Rental, Inc. v. Illinois Department of Commerce*, 940 F.3d 971, 978 (7th Cir. 2019) ("At best, [plaintiff] has pleaded an injury to itself, not an anticompetitive injury to the market."). Antitrust law is only interested in

preventing harm to the competitive market such as higher prices to consumers. *James Cape*, 453 F.3d at 399.

Tyler cannot escape the fact that its Complaint acknowledges that Lexur's bids were **lower** than the bids received by the Counties in previous bidding cycles. (Complaint, Dkt. 1, ¶ 74). Tyler makes no allegation that Lexur's conduct resulted in the Counties paying higher prices; it pleads the exact opposite. Instead, Tyler alleges only that Lexur undercut Tyler's publicly available previous bids. Like the defendants in *James Cape & Sons*, Lexur's alleged conduct in this case "drove the price down among various competitors," which does not constitute an antitrust injury. *See* 453 F.3d at 399.

Tyler's Complaint contains no actionable allegations showing injury to competition. Instead, Tyler seeks to recover what it allegedly lost after Lexur submitted more competitive bids to the Counties. Cases from this circuit have made clear that type of claim is unavailable under the Sherman Act. Accordingly, the Court should dismiss Count I of Tyler's Complaint.

## II. Tyler's *Post-Hoc* Effort to Claim it has Pled Bid-Rigging and is Thereby Excused from Pleading Anti-Trust Injury is Futile

Perhaps recognizing its failure to allege anti-trust injury under the Sherman Act, Tyler attempts to avail itself of an exception to the requirement that it plead anti-trust injury. Specifically, Tyler argues that Lexur's conduct constitutes "bid-rigging," which Tyler argues is a *per se* anti-trust violation that would excuse it from the general requirement that anti-trust injury is required to plead a Sherman Act claim. (Omnibus Opposition, Dkt. 58, p. 11). The problem for Tyler is that Lexur's alleged conduct as pled in Tyler's Complaint – and in actuality – does not constitute "bid-rigging" under well-settled federal law.

4

The Seventh Circuit Court of Appeals took a detailed look at what constituted "bid-rigging" under the Sherman Act's criminal guidelines in *U.S. v. Heffernan*, 43 F.3d 1144 (7th Cir. 1994).[1]. The *Heffernan* case involved a conspiracy among executives of competing companies to sell products at identical prices to two large buyers. *Id*. at 1145. The appellant was convicted of violating section 1 of the Sherman Act and was sentenced to two years in prison, in part because the trial court found he had engaged in "bid-rigging." *Id*. On appeal, the Seventh Circuit grappled with whether the conduct at issue constituted "bid-rigging," and even what that oft-cited, but rarely defined, term meant. *Id*.

Judge Posner began his analysis by noting that the term "bid-rigging" – "though much bandied about in antitrust cases" – was not a distinct criminal offense and was not defined in the criminal sentencing guidelines or its commentary *Id*. at 1146. He found, however, that "the vast majority of cases in which the term has appeared have treated it as a synonym for bid rotation." *Id*. (citing numerous cases). "Bid rotation" consists of "any agreement between competitors pursuant to which contract offers are to be submitted to or withheld from a third party." *Id*.

The Seventh Circuit concluded that the appellant's conduct constituted "price fixing" rather than "bid-rigging," because the conduct did not involve rotating bids amongst competitors. *Id*. at 1149-50. But regardless of whether conduct constitutes "price fixing" or "bid-rigging" those terms both involve a central element – an **agreement among competitors** to fix prices submitted to a buyer or to divvy up work among themselves. *Id.* at 1149 (finding that "price fixing" and the

---

[1] Lexur acknowledges that the present case is a civil, not a criminal action. However, because Tyler attempted to evoke the *per se* violation of "bid-rigging" under criminal cases, Lexur will rely on cases interpreting the criminal guidelines to show how Tyler's Complaint does not allege "bid-rigging" as contemplated by criminal cases. It is questionable whether "bid-rigging" gives rise to *per se* civil liability. *See James Cape & Sons Co. v. PCC Const. Co.*, 453 F.3d 396, 399 (7th Cir. 2006) (calling activities "bid-rigging" but affirming the denial of plaintiff's complaint for the failure to state an anticompetitive injury).

colloquial definition of "bid rigging" both would involve scenarios in which "competitors get together and agree to sell at a uniform price"); *see also In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 336 (3rd Cir. 2010) (holding that "bid rigging" is "quintessentially collusive behavior" involving agreements among competitors); 1 CALLMANN ON UNFAIR COMP., TR. & MONO. § 4.34 (4th ed) ("Collusive bidding compromises an agreement between competitors in a bidding contest to submit identical bids or, by pre-selecting the lowest bidder, to abstain from all bona fide effort to obtain the contract.").

Tyler's Complaint is devoid of any allegation that Lexur colluded with other competitors to allow Lexur to obtain the bids from the Counties. The Complaint does not mention any other competitor (besides Tyler) at all.  Instead, the Complaint alleges that Lexur worked directly with the Counties to obtain an opportunity – Tyler alleges unfairly – to bid for work previously awarded to Tyler and to do so at prices lower than that previously offered by Tyler.  This is not "bid rigging," "price fixing," or any other form or *per se* anti-competitive conduct under ***any*** definition of those terms.  Without collusion among competitors, there is no *per se* wrongful conduct.

Tyler relies on *U.S. v. Azzarelli Const. Co.* to support its argument that "bid-rigging" excuses Tyler's failure to allege consumer anti-trust injury as part of its Sherman Act claim against Lexur.  612 F.2d 292 (7th Cir. 1979). But the complained of acts in *Azzarelli* expressly involved an agreement among competitors to allocate bidding for projects among themselves. *Id.* at 297 ("At the bidding on July 29, 1975, item 25 went to Loitz, who was the only bidder. Azzarelli had agreed to let Loitz have it in reciprocity for a prior contract awarded to Azzarelli several months before.").  And the *Azzarelli* court ultimately determined that "bid-rigging" was the "division of markets or allocation of business" that results in a per se violation. *Id.* at 294.

6

"Bid rigging," "price fixing," and other, similar per se violations require collusion between competitors. Tyler's Complaint, even under its most generous reading, pleads nothing of the sort. Lexur's conduct did not constitute "bid-rigging" because Lexur did not conspire with other competitors to obtain the bids. Instead, Lexur simply offered a competitive bid to the Counties which the Counties accepted. Accordingly, no *per se* violation of the Sherman Act has occurred and Tyler's failure to allege anti-trust injury is fatal to its Sherman Act claim.

### III. Tyler Has not Alleged an "Antitrust Injury" or Collusion Required to State its Claim Under Indiana Law

Tyler's Indiana antitrust law claim initially fails for the same reason as its federal claim: there is no "antitrust injury" for which Tyler may recover. Tyler cites to Ind. Code § 24-1-2-3 to argue that the Indiana Antitrust Act does not directly "pattern" federal antitrust law. (Response, Dkt. 58, p. 12). However, claims under both laws still require a showing of an "antitrust injury" which Tyler has failed to allege (and in fact, has conceded it cannot allege). Regardless of the lack of "antitrust injury" alleged, the specific Indiana statute cited by Tyler requires a showing of collusion between multiple parties. Tyler's Complaint alleges misconduct by Lexur alone, therefore failing to state a claim under Ind. Code § 24-1-2-3.

1. *Indiana Law Follows Federal Law's "Antitrust Injury" Requirements*

Under both the Clayton Act[2] and the Indiana Antitrust Act, the plaintiff must allege an "antitrust injury" that "naturally flows from what makes the defendant's acts unlawful." *City of Auburn Through Bd. of Public Works and Safety v. Mavis*, 468 N.E.2d 584, 585 (Ind. Ct. App. 1984). Compare that to federal law's understanding of "antitrust injury," which similarly requires a party to show "injury of the type the antitrust laws were intended to prevent and that flows from

---

[2] Ind. Code § 24-1-2-3 is modelled after the Clayton Anti-Trust Act, 15 U.S.C. § 15. *City of Auburn Through Bd. of Public Works and Safety v. Mavis*, 468 N.E.2d 584, 585 (Ind. Ct. App. 1984).

7

that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977). There is no distinction between the damages required to state a claim for these two analogous statutes, which is why Indiana cases specifically rely upon federal authority to determine Indiana Antitrust Act cases. *See City of Auburn*, 468 N.E.2d at 585 ("Due to the dearth of decisions under IC 24-1-2-3 & -7, Indiana courts use decisional law under the similar federal antitrust law . . . ."). In fact, the case relied upon by Tyler, *City of Auburn*, **cites to federal authorities** when it provides "actual damages" as an element of a claim. *See id*. (citing *Brunswick Corp.*, 429 U.S. at 489). Indiana law clearly requires an "antitrust injury" which directly flows from the conduct alleged. Tyler has failed to allege that type of injury here, making its claim subject to dismissal.

Additionally, the facts in *City of Auburn* suggest dismissal is appropriate here. In that case, the Indiana Court of Appeals awarded damages in the form of the "lost time in preparing a useless bid" that was going to be awarded to the defendants due to collusion between the plaintiffs and the governmental entity. *Id*. at 586. Those damages incurred in preparing a bid that was never going to be successful were considered the type to be naturally flowing from the unlawful conduct; but for the collusion, the plaintiffs may have had a chance to obtain the bid. *Id*.

Tyler, however, does not allege that it sustained damages in preparing a futile bid. Rather, Tyler seeks to recover for damages it incurred only *after* it lost the contracts, such as "costs to investigate" the Defendants' conduct and "the cost to formally protest the bid process and secure reinstatement of the" contracts. (Response, Dkt. 58, p. 13). Tyler would have incurred the same costs if it lost the contracts with the Counties regardless of the legality or illegality of the Defendants' conduct. Accordingly, post-bidding damages like the damages claimed by Tyler are not "the type of injury which naturally flows from what makes the defendant's acts unlawful." *City*

*of Auburn*, 468 N.E.2d at 586. Whether under the Sherman Act or Indiana law, Tyler's damages are not recoverable.

Instead, this Court should look to the subsequent case distinguishing the *City of Auburn* court's interpretation of damages, *Thompson v. Vigo County Bd. of County Com'rs*, 876 N.E.2d 1150, 1155 (Ind. Ct. App. 2007). In that case, the plaintiff attempted to bring an antitrust claim under Indiana law after he alleged that a competitor colluded with the county to restrain bidding and restrict free competition in violation of Ind. Code § 24-1-2-3. *Id*. at 1154-55. The defendants argued that the plaintiff failed to prove that "but for the anti-trust violation, he would have gotten the bid," and the court agreed. *Id*. at 1155. "In the case before us, [plaintiff] did not submit a bid in response to [the county's] Notice of Offer. Therefore, it would be difficult to prove, let alone, speculate, that [plaintiff] would have been the successful bidder but for the purported collusion . . . ." *Id*. The court in *Thompson* distinguished the damages in *City of Auburn* by noting that in the previous case "we focused on the fact that [the plaintiff's] time spent in preparing a bid would not have been wasted but for the collusion prior to the bidding. Here . . . [the plaintiff] did not even expend the effort to prepare a bid." *Id*. at 1156.

Like the plaintiff in *Thompson*, Tyler has not made any allegation that it wasted time or money on preparing a bid that would have been futile but for Lexur's conduct. Instead, Tyler has only alleged lost profits and other post-bidding costs incurred after it failed to submit a competitive bid. (Complaint, Dkt. 1, ¶¶ 69-70; 76). Those damages are not recoverable in an antitrust action because they do not flow from the alleged antitrust violation; Tyler would have incurred these costs regardless of the manner in which the Counties would have accepted Lexur's lower offer. Without a valid "antitrust injury," Tyler has not stated a claim under Ind. Code § 24-1-2-3 for which it may recover.

9

Tyler's attempt to distinguish Indiana law and federal antitrust law is unavailing. Like its federal analogue, Indiana antitrust law requires a showing of an "antitrust injury" that results from the allegedly unlawful conduct. The threshold showing of antitrust injury is required before the court's attention turns to whether the competitor can itself show that it was also injured by anticompetitive conduct. Tyler has made no showing as to how Lexur's alleged unlawful conduct prevented it from obtaining or retaining the contracts with the Counties. Instead, Tyler has only alleged post-bidding damages that are not the type that "naturally flow[] from what makes the defendants' acts unlawful." *City of Auburn*, 468 N.E.2d at 586. Accordingly, Tyler's Complaint fails to state a claim under Indiana law.

2. *Tyler Fails to Allege Collusion*

To state its Indiana Antitrust Act claim, Tyler relies upon Ind. Code § 24-1-2-3. However, Tyler fails to allege all the elements required to state a claim under that section of Indiana's Antitrust Act.

Indiana Code § 24-1-2-3 provides that a party commits a Class A misdemeanor when that party "engages in any scheme, contract, or combination to restrain or restrict bidding for the letting of any contract for private or public work, or restricts free competition of any contract for private or public work . . . ." A party may pursue a violation of this act as a civil claim. Ind. Code § 24-1-2-7.

For a claim to proceed under Ind. Code § 24-1-2-3, the plaintiff must show that two or more parties colluded together to engage in a "scheme, contract, or combination" to restrict bidding. *Shook Heavy and Environmental Const. Group, a Div. of Shook, Inc. v. City of Kokomo*, 632 N.E.2d 355, 359 (Ind. 1994) ("An unsuccessful bidder could challenge the award of a contract . . . only if . . . the unsuccessful bidder alleged collusion or fraud."); *Gariup Const. Co., Inc. v.*

*Carras-Szany-Kuhn & Associates, P.C.*, 945 N.E.2d 227, 233 (Ind. Ct. App. 2011) (denying claim where party failed to prove collusion between competitors). Multiple individuals representing the same entity cannot "collude" together for the purposes of satisfying the statutory "collusion or fraud" requirement. *See Fuller v. Town of Vevay ex rel. Vevay Town Council*, 713 N.E.2d 318, 322 (Ind. Ct. App. 1999) ("it is clear then that the [defendant] cannot scheme, contract or combine with itself in violation of Indiana Code Section 24-1-2-3.").

Tyler has not alleged any collusion or fraud in this case. Instead, Tyler's Complaint alleges that only the "Defendants orchestrated the Rebid Conspiracy" to obtain the contracts with the Indiana Counties. (Complaint, Dkt. 1, ¶¶ 2,6). Nowhere does Tyler allege that Lexur coordinated with any other competitors or entities to enact this "conspiracy" as required to sustain a claim under Ind. Code § 24-1-2-3. Without any allegations of fraud or collusion between Lexur and any other competitor, Tyler's Complaint fails to state a claim for an antitrust violation under Indiana law.

To the extent Tyler argues that Lexur "conspired" with co-defendants, that argument fails because all the parties were acting on behalf of and for Lexur's benefit. *See Fuller*, 713 N.E.2d at 322 (individuals considered to be one for purposes of collusions where "they were all [] action by or on behalf of the" same entity). Additionally, while Davis and Thornsberry are alleged to have been Tyler employees at the time these events occurred, Davis and Thornsberry had no power to further anticompetitive activities. Tyler alleges that the "anticompetitive activities" resulted in the Counties adjusting their bidding schedules. (Complaint, Dkt. 1, ¶ 6). However, the Counties themselves exclusively control that bidding schedule, not Lexur or the other Defendants. Accordingly, even if Lexur "conspired" with the co-defendants, no collusion to adjust the bidding schedule could have occurred due to the Defendants' inability to control that bidding schedule.

Tyler's allegations only claim that the Defendants acted independently and without other competitors to further the alleged conspiracy. That is insufficient to state a claim for an antitrust violation. Without any allegations of collusion, Tyler's Indiana Antitrust Statute claim fails.

### IV.  None of the Conduct Alleged by Tyler Amounts to "Wrongful" Conduct

Tyler attempts to salvage both of its tortious interference claims by arguing that the Complaint adequately alleges a lack of justification. (Response, Dkt. 58, p. 14). Tyler is wrong.

Tyler argues that its Complaint alleging that Lexur used "wrongful means" to "rig the bidding process for various public works contracts, resulting in an unlawful restraint on trade." (Response, Dkt. 58, p. 14). As discussed, *supra*, Lexur's conduct does not constitute "bid rigging," "price fixing," or any other *per se* anticompetitive conduct. Tyler therefore cannot rely upon allegations of that conduct to sustain its tortious interference claims. *Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*, 796 N.E.2d 286, 291 (Ind. 2003).

Tyler's Response seems to imply that the fact that the Counties terminated their contracts with Tyler and offered out-of-cycle bids is somehow wrongful conduct attributable to Lexur. Notably absent from Tyler's Complaint, however, is any allegation that Lexur's conduct violated or induced the Counties to violate Indiana's public bidding laws for awarding public contracts. Nor does Tyler name any of the Counties or their employees as parties involved in any actual collusion.  Instead, Tyler merely states that there is improper conduct – perhaps involving the Counties or their employees – but it never actually alleges any facts supporting this statement. That is insufficient to state a claim. *Road v. BP Products North America, Inc.*, 589 F.3d 389, 399 (7th Cir. 2009) (denying claim that "merely restates the elements . . . in boilerplate fashion" without adequate underlying facts).

Tyler cannot allege that Lexur acted wrongfully simply because the Counties cancelled their contracts and issued bids which Lexur ultimately obtained. Tyler must allege how that conduct is somehow "wrongful" such as making misrepresentations, applying unfair economic pressure, or threatened litigation which induced the Counties to breach their contracts. *Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1235 (Ind. 1994). Tyler's Complaint contains no such allegations. Nor does Tyler allege that Lexur's conduct was with "a willful or spiteful intent to injure" Tyler. *Id*. Instead, Tyler's Complaint makes clear that Lexur acted with the intent to obtain contracts with the Counties. (Complaint, Dkt. 1, ¶¶ 88, 95, 103, 109). Indiana law provides that pursuing one's own business interest is not "without justification." *See Konecranes, Inc. v. Davis*, No. 1:12-cv-01700-JMS-MJD, 2013 WL 1566326 at *3 (S.D. Ind. 2013); *see also Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1236 (Ind. 1994) (We perceive no reasonable argument that, given the legitimate business intent . . . in engaging in the sales transaction, any tort was committed.").

Tyler's Complaint is therefore distinguishable from the plaintiffs in *Howmedica Osteonics Corp. v. DJO Global, Inc.* upon which Tyler relies. The "wrongful means" employed by the defendants in *Howmedica* resulted from claims that fraudulent misrepresentations were made to advance business interests. *Howmedica Osteonics Corp. v. DJO Global, Inc.*, 2018 WL 3130969 at *4 (S.D. Ind. Mar 15, 2018). The Court quoted directly from the Restatement (Second) of Torts, which provides that "[f]raudulent misrepresentations are also ordinarily a wrongful means of interference and make an interference improper." *Id*. (quoting Restatement (Second) of Tots § 767). Because the complaint alleged that the business interests were advanced using fraudulent misrepresentations, specifically identified by the Restatement as an example of "wrongful means," the Court allowed the claim to proceed. *Id*. at *4-5. Contrast that with the present case, where Tyler

13

has not alleged any wrongful means other than the alleged "unlawful restraint on trade" which fails as a matter of law. (*See* Sections I-II, *supra*). Instead, Tyler's Complaint relies upon the bare assertion that Lexur's attempt to obtain contracts with the Counties was somehow "wrongful" simply because Lexur was awarded the contracts. That is not a proper basis to find a lack of justification under Indiana law. *See Knoecranes, Inc. v. Davis*, 2013 WL 1566326 at *2-3 (S.D. Ind. Apr. 12, 2013) (holding that intentional inducement to cancel and/or not renew contracts with competitor is "a legitimate business interest").

The Indiana Supreme Court in *Winkler* summarized the issue succinctly: "[the plaintiff] gives, and we perceive, no reasons why his contract interests should receive greater protection in tort law than the business interests sought to be advanced by defendants here. . . ." *Winkler*, 638 N.E.2d at 1236. Tyler wishes to rely upon its tortious interference claims in order to prevent Lexur from advancing its own business interests. Indiana law does not allow for such claims. Accordingly, this Court should dismiss Counts III and IV of Tyler's Complaint.

### V.     Tyler's Civil Conspiracy Claim has no Underlying Tort

Because Tyler's claims for tortious interference with contract and tortious interference with business relationships both fail, so much Tyler's civil conspiracy claim.

### CONCLUSION

For these reasons, this Court should grant Defendant Lexur's Motion to Dismiss Tyler's Complaint with prejudice.

Respectfully submitted,

LEWIS WAGNER, LLP

By /s/A. Richard M. Blaiklock
A. RICHARD M. BLAIKLOCK, #20031-49
*Counsel for Defendant Lexur Enterprises, Inc.*

14

## CERTIFICATE OF SERVICE

      I hereby certify that on February 1, 2021, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.

| | |
|---|---|
| Ann O. McCready<br>Vivek Randle Hadley<br>TAFT STETTINIUS & HOLLISTER LLP<br>One Indiana Square<br>Suite 3500<br>Indianapolis, IN 46204<br>amccready@taftlaw.com<br>vhadley@taftlaw.com | Douglas B. Bates<br>Chelsea R. Stanley<br>STITES & HARBISON PLLC<br>323 East Court Avenue<br>Jeffersonville, IN 47130<br>dbates@stites.com<br>cstanley@stites.com |
| Jennifer J. Nagle<br>Michael R. Creta<br>K&L GATES LLP<br>State Street Financial Center<br>One Lincoln Street<br>Boston, MA 02111<br>jennifer.nagle@klgates.com<br>michael.creta@klgates.com | R. Jeffrey Lowe<br>KIGHTLINGER & GRAY, LLP<br>Bonterra Building, Suite 200<br>3620 Blackiston Boulevard<br>New Albany, IN 47150<br>jlowe@k-glaw.com |
| John H. Haskin<br>Samuel Mark Adams<br>JOHN H. HASKIN & ASSOCIATES, LLC<br>255 North Alabama<br>Second Floor<br>Indianapolis, IN 46204<br>jhaskin@jhaskinlaw.com<br>sadams@jhaskinlaw.com | |

                                                     /s/A. Richard M. Blaiklock
                                                      A. RICHARD M. BLAIKLOCK

**LEWIS WAGNER, LLP**
501 Indiana Avenue, Suite 200
Indianapolis, IN 46202-6150
Phone:   317-237-0500
Fax:      317-630-2790
rblaiklock@lewiswagner.com