# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# NEW ALBANY DIVISION

|  |  |  |
|---|---|---|
| TYLER TECHNOLOGIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 4:20-cv-00173- TWP-DML |
| | ) | |
| LEXUR ENTERPRISES INC., ROBERT FRY, | ) | |
| JIMMY DAVIS, JOE THORNSBERRY, | ) | |
| AND JOHN DOES 1-100 | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF TYLER TECHNOLOGIES, INC.'S
## OPPOSITION TO MOTION TO STAY DISCOVERY

Plaintiff Tyler Technologies, Inc. ("Tyler") respectfully requests that the Court deny the Motion to Stay Discovery (the "Motion") filed by Defendant Lexur Enterprises, Inc. ("Lexur") and joined by Defendant Robert Fry ("Mr. Fry") (Lexur and Mr. Fry together, the "Defendants"). (*See* DE #68–72).

Defendants' Motion is a blatant delay tactic that comes over 5 months after the Parties negotiated a detailed Case Management Plan, with a discovery schedule, that made no mention of a stay of discovery. It is only now, realizing what documents they will be required to produce in this action, that Defendants are suddenly attempting to avoid that eventuality and ensure that the relevant information found in their materials does not see the light of day.

The Motion must be denied because a stay of discovery is the exception, not the rule, and Defendants have offered no sound reason why the circumstances presented warrant deviation from the norm. This is not a case where the pending motions to dismiss will unquestionably resolve the

entire matter. The Parties have legitimate legal and factual disputes that will not be resolved entirely (if at all) at the pleadings stage. Nor is this a case where burden considerations counsel in favor of a stay of discovery. To the contrary, Defendants have provided nothing to substantiate that the discovery sought by Tyler is voluminous or inaccessible, or that other proportionality concerns are in play. Instead, Defendants merely state in conclusory fashion that the discovery is broad and they would rather not participate. Ultimately, the Motion contains no support to substantiate the special treatment that Defendants are seeking and the Motion should be denied.

## BRIEF PROCEDURAL BACKGROUND

The Parties conferred and submitted a Case Management Plan ("CMP") to the Court on September 24, 2020, which was approved as modified on October 1, 2020. (DE #26, DE #35–36). Though Defendants knew during the Parties' negotiation of the CMP that they intended to move to dismiss,[1] they did not include any request for a stay of discovery in their respective positions contained with the CMP. As a result, the final CMP contains no mention of any discovery stay; to the contrary, it sets out a detailed discovery schedule that was negotiated by the Parties.

A few days after the Parties' submission of the CMP (DE #26), on September 29, 2020 and September 30, 2020, Defendants filed their motions to dismiss. (DE #29-31) (the "Motions to Dismiss"). On October 1, 2020, the Parties appeared before the Court for the Initial Pretrial Conference. Despite the motions to dismiss being on file by then, once again, there was no request by Lexur or Fry for any stay of proceedings or to modify the CMP to reflect such an interest by the Defendants. The Court accordingly entered the CMP (as modified) (DE #36) and the Parties

---

[1] The CMP notes Defendants' position that Tyler's Complaint fails to state a claim upon which relief can be granted (DE #26 and #36, Section C) and the motions to dismiss were filed just a few days later. (DE #30-32).

proceeded to exchange initial disclosure statements and to exchange and file preliminary witness and exhibit lists (DE #42, 44-4).

Following a brief delay while the Parties explored potential settlement, Tyler served its discovery requests in early February 2020. Yet still, Defendants did not reach out to Tyler regarding a stay or any issue with the scope of the requests. This Motion, filed over 5 months after the Parties submitted the CMP and 3 weeks after Tyler served the discovery requests, is the first time any mention of a stay has been uttered.

## LEGAL STANDARD

The Court has "extremely broad discretion in controlling discovery[,]" including managing the timing, frequency, and manner of discovery. *See Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1115 (7th Cir. 2013); *see also CMG Worldwide Inc. v. Adidas Am., Inc.*, No. 1:17-cv-2356-RLM-DML, 2018 WL 7140117, at *2 (S.D. Ind. Sept. 26, 2018) (Lynch, J); *Red Barn Motors, Inc. v. Cox Enters., Inc.*, No. 1:14-cv-01589-TWP-DKL, 2016 WL 1731328, at *2 (S.D. Ind. May 2, 2016); *Nixon v. Haag*, No. 1:08-cv-00648-LJM-JMS, 2009 WL 2026343, at *2 (S.D. Ind. July 7, 2009). While the Court *may* limit discovery to protect a party from undue burden or expense, there is "no general policy of staying discovery when a motion to dismiss is filed, nor does the filing of a motion to dismiss trigger a presumption that discovery will be stayed." *CMG Worldwide Inc.*, 2018 WL 7140117, at *3; *see Red Barn Motors*, 2016 WL 1731328, at *2 ("[f]iling a motion to dismiss does not automatically stay discovery, … and the court is not required to grant a motion to stay discovery pending a ruling on a motion to dismiss."). Importantly, "[c]ourts disfavor stays of discovery 'because they bring resolution of the dispute to a standstill.'" *Gookins v. County Materials Corp.*, No. 1:19-cv-00867-JPH-MJD, 2019 WL 3282088, at *1 (S.D. Ind. July 18, 2019)

The party seeking a stay "bears the burden of proving that the Court should exercise its discretion in staying the case." *Red Barn Motors*, 2016 WL 1731328, at *2. To satisfy this burden,

3

the moving party must show that good cause exists for a stay, which includes consideration of such factors as "whether the stay will prejudice the non-movant; whether the stay will simplify the issues in the case; and whether the stay will reduce the burden of litigation for the parties or the court." *U.S. ex rel. Robinson v. Ind. Univ. Health Inc.*, No. 1:13-cv-02009-TWP-MJD, 2015 WL 3961221, at *1 (S.D. Ind. June 30, 2015). This typically requires affidavits or other evidence supporting the movant's assertions that a burden will result absent a stay. *See id.* at *5.

Courts must also consider the prejudice to the judicial system as a whole in considering whether to make an exception and grant a stay. *See id.* at *6 ("Districts courts have an important and inherent authority and obligation to control their calendars and ensure that litigation proceeds expeditiously[.]"). To this end, the Court's interest in expeditiously resolving the case must be considered. *Id.* at *9.

## ARGUMENT

Defendants contend that discovery should be stayed until after the Court rules on the Motions to Dismiss because (1) they have the "potential to eliminate all of Tyler's claims," (2) Tyler's discovery requests will not uncover additional facts to support Tyler's claims, and (3) Tyler's discovery requests represent a "substantial burden" to Defendants. (DE #69, p. 3–4). These arguments are unsupported and do not warrant staying discovery, especially in a case in which the pending Motions to Dismiss are not likely to be dispositive.

**A.     Defendants' Subjective Predictions Regarding The Outcome of Their Motions to Dismiss Are Not Sufficient to Support A Stay.**

As a threshold matter, "[t]his court has no general policy of staying discovery when a motion to dismiss is filed. And the filing of a motion to dismiss does not trigger any presumption that discovery will be stayed." *CMG Worldwide Inc.*, 2018 7140117, at *3; *see also Proximo Distillers, LLC v. City of Lawrenceburg, et al.*, No. 4:18-cv-00124-RLY-DML (S.D. Ind. Dec, 5,

4

2018), DE #43 at 3 (Lynch, J) (Order attached hereto as Exhibit A). Here, Defendants offer nothing but their subjective belief that they will prevail in securing dismissal of Tyler's Complaint. This is not a situation where high court authority plainly renders the complaint deficient, where standing is unquestionably lacking, or where qualified immunity is potentially implicated. Defendants of course profess confidence in their Motions to Dismiss. But such a predictable expression of confidence does not provide sufficient grounds for a discovery stay. *See Red Barn Motors*, 2016 WL 1731328, at *2 ("Thus, even though the motion [to dismiss] may raise dispositive legal issues, any likelihood of success on the motion does not justify granting a stay."); *see also New England Carpenters Health & Welfare Fund v. Abbott Labs.*, No 12 C 1662, 2013 WL 690613, at *1 (N.D. Ill. Feb. 20, 2013) (defendant's assertion that its motion has a "high likelihood of success" is "mere speculation"). As the Court found in rejecting a stay in another action, Defendants' "arguments in support of a stay …are generic and superficial—they could be made in any lawsuit where a defendant asks for a stay of discovery because it has filed a motion to dismiss." *Proximo Distillers, LLC*, No. 4:18-cv-00124-RLY-DML, DE #43 at 3 (*see* Exhibit A).

The superficiality of Defendants' confidence in their own Motions to Dismiss is well-illustrated by the papers on file to date. To start, Tyler's detailed, 127-paragraph Complaint easily satisfies the federal pleading standard — replete with allegations and demonstrative exhibits that call out in black and white the Defendants' collusive plan to orchestrate a non-transparent, unfair, and anti-competitive bid process. Tyler's allegations detail conduct that was a far cry from normal competitive behavior, had no business justification, and caused direct antitrust injury, by eliminating the chance of competing lower bids and thus increasing cost to the taxpayers of Indiana. *See generally* Complaint (DE #1).

Contrary to Defendants' primary argument that Tyler has not alleged an "antitrust injury," Tyler alleged direct injury to competition by outlining Defendants' intentionally designed plan to eliminate competitors from the rebid process by ensuring that no other bidder would have notice of the requests for rebids until the last possible moment, and even then over a federal holiday weekend, thereby eliminating the possibility for competitors to compete in the rebid. (DE #1 ¶¶ 45–46, 59). Defendants' conduct also caused antitrust injury because it all but guaranteed that the Counties and taxpayers would not receive the lowest price, as Defendants knew the price they had to beat, only had to beat it slightly, and no other vendor had sufficient notice to bid at a lower price, including Tyler. (*Id.* ¶ 1). And importantly, even if Tyler has not plausibly alleged an antitrust injury (though it has), Tyler's Sherman Act claim would nonetheless survive because bid-rigging is considered a *per se* violation of the Sherman Act, meaning Tyler was not required to plead injury. *See U.S. v. Azzarelli Const. Co.*, 612 F.2d 292, 294 (7th Cir. 1979) ("there are certain agreements or practices which because of their pernicious effect on completion and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use" and bid-rigging "has been recognized as a per se violation since the [Supreme Court's 1899 decision in *Addyston Pipe and Steel Co. v. United States*].").

Setting aside the federal Sherman Act claim, and despite Defendants' continued effort to conflate the federal and state antitrust statutes, the Indiana Antitrust Act independently renders the type of conduct alleged in Tyler's Complaint a statutory antitrust violation, as well as a Class A misdemeanor. *See* Ind. Code § 24-1-2-3 ("A person who engages in any scheme, contract, or combination to restrain or restrict bidding for the letting of any contract for private or public work, or restricts free competition for the letting of any contract for private or public work, commits a

Class A misdemeanor."); *see also* Ind. Code § 24-1-2-7(a) (expressly providing a private right of action to "[a]ny person whose business or property is injured" by conduct in violation of Ind. Code § 24-1-2-3). The Complaint, at a minimum, directly and expressly alleges a violation of this specific language of the Indiana Antitrust Act,[2] which also serves to plead illegal acts and lack of justification to support Tyler's tortious interference claims. *See, e.g., Howmedica Osteonics Corp. v. DJO Global Inc.*, 2018 WL 3130969, at *3 (S.D. Ind. Mar. 15, 2018); *Buztronics, Inc. v. Theory3, Inc.*, 2005 WL 1865512, at *6 (S.D. Ind. Aug. 5, 2005). Coupled with the wrongful means employed by Defendants in the execution of their scheme (manipulating and leveraging Tyler employees to leverage Tyler inside information and goodwill with the Counties), Tyler's tortious interference claims should survive dismissal whether or not the federal and state antitrust claims do.

Importantly, Defendants did not file a motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenging subject-matter jurisdiction for lack of standing (and if they had, Tyler could have and would have submitted evidence in opposition to refute such an argument). Instead, Defendants filed a motion to dismiss for failure to state a claim. As such, even if the Court were to determine that Tyler has not adequately alleged its claims, Tyler should likely be granted the opportunity to amend its pleadings to remedy any potential deficiencies. *See Red Barn Motors*, 2016 WL

---

[2] Defendants' repeated reliance on the purported lack of an antitrust injury is also completely inapposite as applied to the Indiana Antitrust Act because Indiana courts have held that a plaintiff's own damages (such as time and cost wasted on a bid where the process was rigged) are sufficient to sustain a claim under that Act. *See City of Auburn Through Bd. Of Public Works and Safety v. Mavis*, 468 N.E.2d 584, 585 (Ind. Ct. App. 1984); (DE #1, ¶¶ 69-70, 76). Here, Tyler's injuries go much further, given the significant costs it was forced to incur to investigate Defendants' conduct and to inform the Counties of the circumstances, the initial loss of the Contracts for certain of the Counties, and the cost to formally protest the bid process and secure reinstatement of the Contracts, among other injuries detailed in the Complaint.

1731328, at *2. In such situations, staying discovery would "only build in unnecessary delay" in resolving the matter, and therefore, proceeding is not wasteful. *See id.*

**B.      The Requested Discovery Will Reveal Facts That Support Tyler's Claims.**

Defendants' assertion that Tyler's requested discovery will not "uncover any facts that will fix [Tyler's] failure to state a claim upon which relief can be granted" is self-serving and misguided. (DE # 69, p. 5–6). As an initial matter, and as discussed above, Tyler has adequately pled all of its claims. But, to the extent the Court believes Tyler has not pled a particular claim with the requisite level of specificity, Tyler's document requests will likely provide evidence that could be used to correct any perceived pleading deficiencies.

All of Tyler's document requests directly target information related to Defendants' concerted scheme to eliminate competition from the bidding process for Indiana public works contracts. (*See* DE #69, Exhibit A).³ Tyler has requested information concerning Defendants' interactions with their co-conspirators, Defendants' interactions with the six Indiana counties targeted in the rebid conspiracy, the contracts at the center of the rebid conspiracy, and the contract rebid process coordinated by the Defendants. (*Id.*). Where Tyler has already found documents confirming the Defendants' collusion, which are attached to the Complaint, it is highly likely that its discovery requests will further draw out the details of the conspiracy, which will assist in further supporting Tyler's claims.⁴ Since the filing of the Complaint and through certain public records requests to the Counties, for example, Tyler has come to reasonably believe that Defendants' collusion went so far that Lexur did not even submit bids for the contracts they were ultimately

---

³ The document requests served on Lexur and Mr. Fry are nearly identical.

⁴ Notably, the evidence that Tyler has uncovered thus far is the result of the Defendants' co-conspirators using Tyler's email system to communicate information about the conspiracy amongst themselves. Tyler has also obtained a limited amount of information directly from the Counties through public record requests that Tyler issued in order to protest the bid process.

awarded, a fact that would underscore how directly the competitive process was harmed by Defendants' actions. Tyler's Request No. 13 calls directly for the production of any such bids. If none exist, the Complaint could be amended to confirm that fact and would go even further to detail the clear injury to competition that Defendants' actions have inflicted.

By way of other examples, eight of Tyler's requests seek documents pertaining to, and communications between, Defendants and their co-conspirators. (*Id.*, Requests 1-2, 19-24). This discovery will likely demonstrate the wrongful means that Defendants employed by orchestrating and implementing their scheme to rig the bidding process for public works contracts, which is directly related to elements in each of Tyler's five claims. Similarly, fifteen of Tyler's document requests specifically target information pertaining to the Defendants' communications with any employees or representatives of the relevant Indiana Counties, or their respective boards of commissioners. (*Id.*, Requests 4-10, 12-18, 22*).* These requests will likely not only provide information about the direct efforts that Defendants took to eliminate competitors from the bid process, but will also show the collusive efforts that Defendants took to ensure that Lexur would obtain the contracts at issue. Tyler's remaining three requests are meant to obtain information about the intentionally manipulative measures that Defendants took to cause harm not only to Tyler, but also to the market. (*Id.*, Requests 3, 11, 25). This information would support the injury element of Tyler's state and federal antitrust claims, as well as the absence of justification and "illegal action" elements of Tyler's tortious interference claims.

The bottom line is that Tyler's document requests were carefully crafted to obtain relevant evidence. As such, even if Tyler indulges Defendants' contentions regarding the deficiencies in the Complaint, that still does not support Defendants' Motion because there is a substantial

9

likelihood that the evidence Tyler has requested, consistent with the CMP, could be used to address any alleged pleading deficiencies.

**C.  Tyler's Discovery Requests Do Not Impose a Burden on Defendants.**

Defendants contend that a stay is justified because Tyler's discovery requests supposedly impose "a substantial burden" and "implicate confidential and trade secret information." (DE #69, p. 6).  This argument lacks merit for at least three reasons: (i) Defendants mischaracterize the scope of Tyler's discovery requests; (ii) Defendants have not established that they will suffer any undue burden in responding to Tyler's discovery requests; and (iii) the implication of confidential and trade secret information, if any, does not support the issuance of a stay.

   *a.  Defendants Mischaracterize the Scope of Tyler's Discovery Requests.*

Tyler served Defendants with 25 narrowly tailored document requests, all of which directly relate to Tyler's five claims and are limited in both time and scope.  (DE #69, Exhibit A).  Indeed, while Defendants mischaracterize the requests as "seek[ing] to discover an incredibly broad scope of documents, many of which require the identification of production of documents over a nearly five-year period," the requests themselves demonstrate that this is not the case.  *Id.*

Of Tyler's 25 requests, 21 of them are limited to documents and communications from January 1, 2020 to the present.[5]  (*Id.*, Request Nos. 1-11, 13-14, 16-24).  Of the remaining four requests, one is limited to specific bids submitted to the Counties in 2017 only (*id.*, Request No. 12), two are limited to bid-related documents and/or employment offers to Tyler employees in 2019-2020 only (*id.*, Request Nos. 15, 21), and one spans a three and a half year period, but is

---

[5] The rebid conspiracy, based on the evidence uncovered to date and noted in the Complaint, was in full swing as of the Spring of 2020.  Tyler, of course, does not know when the collusion first began and very reasonably selected January 1, 2020 (just a few months earlier) as a discovery start date aimed at capturing the most relevant materials.

10

narrowly directed to strategy-related documents that expressly involve displacing Tyler from preexisting contracts, i.e. a key issue in this action (*Id.*, Request No. 12).[6] These are the distinct opposite of "incredibly broad" requests. They target a narrow set of information from the recent past and "[i]t seems likely, therefore, that work necessary to identify persons and places likely to hold discoverable information and to gather information will not be an unduly burdensome task." *Proximo Distillers, LLC*, No. 4:18-cv-00124-RLY-DML, DE #43, at 4 (denying motion to stay because, among other reasons, the requests targeted documents and information in "relatively narrow time frame in the very recent past") (*see* Exhibit A).

> b. ***Defendants Have Not Shown That They Will Suffer <u>Any</u> Burden In Responding To Tyler's Discovery Requests.***

Rather than identify any actual burden associated with responding to Tyler's requests, Defendants instead make the generalized argument that courts often consider discovery in antitrust cases burdensome, and that "Tyler's discovery requests to Lexur represents [*sic*] a substantial burden, implicating numerous communications and other electronically stored documents over a year period." (DE #69, p. 6). These general and unsupported assertions are not enough to substantiate an actual burden.

As a threshold matter, for a stay to be appropriate in any case, including an antitrust case, the moving party must provide specific information and evidence related to the anticipated costs

---

[6] The contracts at issue were granted to Tyler in 2017 after that year's bid process, in which Lexur also participated. As such, Lexur's bids in 2017 and its strategy since then, to the extent it relates to displacing Tyler from the contracts and led up to the rebid conspiracy, is relevant because it will show the wrongful means and motive behind the conduct at issue (as well as Lexur's lack of qualifications, consistent with their failure to secure the contracts in 2017). As for Tyler's requests relating to the Counties' notices to bidders or requests for bids and/or regarding Lexur offers of employment to Tyler employees, given the timing of the conspiracy currently known, it is reasonably likely that such materials and/or communications may have begun in 2019, prompting the slightly earlier start date for those requests.

11

and scope of providing discovery — not merely counsel argument. *See, e.g., Red Barn Motors*, 2016 WL 1731328, at *3 ("[a]ll that Defendants have offered to support their motion are the unsupported statements of counsel in briefs [regarding the substantial burden discovery would impose]. This is insufficient."). More specifically, "[a] party resisting discovery on the basis of undue burden must show with specificity that the discovery requests [at] issue are objectionable. This showing typically requires affidavits or other evidence supporting a party's assertions of burden." s*ee also U.S. ex rel. Robinson*, 2015 WL 3961221, at *5; *see also Castrillon v. St. Vincent Hosp. & Health Care Ctr., Inc.*, No. 1:11-cv-00430-WTL-DML, 2011 WL 4538089, at *2 (S.D. Ind. Sept. 29, 2011) (Lynch, J) (denying defendant's motion to stay because it did not identify "any specific discovery requests that impose an undue burden or expense….").

Here, Defendants merely allege, in conclusory fashion, that "the scope of discovery in this case will be both burdensome and expensive." (DE #69, p. 7). Defendants have not, however, provided any information or detail, through affidavits or otherwise, to validate this position. Defendants do not discuss the number of custodians that potentially have discoverable information, the manner in which the requested information is stored (e.g., paper versus electronic), where the requested information is located, or the potential expense of accessing and providing the requested information. Further, as Lexur is a "small regional competitor" by its own admission, Defendants presumably should have a relatively small scope of documents to search in responding to Tyler's discovery requests. (DE # 69, p. 9). In sum, Defendants have woefully failed to demonstrate any burden at all, let alone one sufficient to support a stay of discovery. *See E.E.O.C. v. Fair Oaks Dairy Farms, LLC*, No. 2:11-cv-265, 2012 WL 3138108, at *3 (N.D. Ind. Aug. 1, 2012) (denying motion to stay where the defendant failed to explain the nature of any burden); *see also Jenkins v. White Castle Management*, 12 C 7273, 2014 WL 3809763, at *2 (N.D. Il. Aug. 4, 2014) (generally

in discovery, "[u]ndue burden or expense, actual or potential, must be shown by 'a particular and specific demonstration of fact, as distinguished from stenotype and conclusory statements.'"); *Red Barn Motors*, 2016 WL 1731328, at *3 (denying motion to stay where "[d]efendants have failed to make a showing, with affidavits or other supporting evidence, that the discovery requests would impose a substantial burden…"); *U.S. ex rel. Robinson*, 2015 WL 3961221, at *5 ("A party resisting discovery on the basis of undue burden must show with specificity that the discovery requests are [*sic*] issue are objectionable. This showing typically requires affidavits or other evidence supporting a party's assertions of burden."); *Castrillon v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 2011 WL 4538089, at *2.

Defendants' attempt to cast a wide net and suggest that antitrust cases generally warrant stays of discovery is no more persuasive than their unsupported burden contentions. To be sure, in some antitrust cases, the breadth of discovery may be extensive. But it is not the case, as Defendants suggest, that Defendants in antitrust cases are afforded a free pass to abstain from discovery until all pleadings motions are resolved. *See, e.g., Forest River, Inc. v. Heartland Recreational Vehicles, LLC*, No. 3:08-cv-490-JD, 2012 WL 404926, at *3 (N.D. Ind. Sept. 12, 2012) (denying a motion to stay despite the existence of antitrust claims because the Defendants failed to provide any specifics regarding "the anticipated costs of providing the discovery or any evidentiary support as to such costs estimates" and instead only made "bald assertions that discovery relative to the claims would be an 'enormous, deedless expense.'"); *see also New England Carpenters Health and Welfare Fund*, 2013 WL 690613, at *3 (explaining that the court ordered a stay in *DSM Desotech* because of the "especially burdensome and costly," and "extensive, voluminous, and expensive to produce" breadth of discovery sought, and not merely because the plaintiff asserted antitrust claims). In other words, the fact that a complaint asserts

13

antitrust claims alone is not a sufficient basis for issuing a motion to stay and, indeed, the potential cost associated with antitrust discovery "is not … tantamount to an automatic prohibition on discovery in every antitrust case where defendants challenge the sufficiency of a complaint." *New England Carpenters Health and Welfare Fund*, 2013 WL 690613, at *3.[7]

Simply put, Defendants' inclusion of buzzwords like "burdensome and expensive" — without any real showing of burden or expense — is not sufficient to warrant a stay of discovery on burden grounds. *See Jenkins*, 2014 WL 3809763, at *2 ("A party claiming undue burden must do more than intone the phrase.").

    c.    ***Confidential or Trade Secret Information Can Be Addressed Via Protective Order.***

Defendants' final argument in support of a stay is that it is necessary to protect disclosure of confidential and trade secret information. If Tyler's discovery requests implicate information that Defendants contend warrants confidential treatment, there are reasonable measures, such as a protective order, that can be used to safeguard such information. *See* Fed. R. Civ. P. 26(c); s*ee also Forest River*, 2012 WL 404926, at *4 (denying a stay despite movants' concerns about producing confidential, trade secret information to a competitor, after finding that a previously issued Protective Order safeguarded such information, and that the movant could seek to amend the order if it did not think the protective order was sufficient). Tyler is entirely amenable to

---

[7] While Defendants state in conclusory fashion that "courts within this Circuit, relying on guidance from the Supreme Court, have consistently stayed discovery in antitrust litigation" (Motion at 3), their cited cases do not support this conclusion. *Coss v. Playtex Products*, *LLC*, No. 08 C 50222, 2009 WL 1455358 (N.D. Ill. May 21, 2009), for example, is not even an antitrust case and stands solely for the proposition that a *partial* stay was appropriate where the discovery sought implicated class members located in 13 states, class-wide patent applications, and alleged violations dating back six years. There, only where the discovery sought implicated an "immense volume of documentation without specifying a relevant time period," did the Court determine a stay was a appropriate. 2009 WL 1455358 at *4. And even then, the court ordered the defendant to respond to certain more limited discovery immediately. *Id.*

negotiating a protective order with the Defendants and believes the Court's Uniform Stipulated Protective Order form would be a productive start.[8]

**D.     A Stay Will Prejudice Tyler and the Judicial System.**

This action is six months old and the Parties negotiated a CMP that currently sets fact discovery to close on June 10, 2021. (DE #36). While Tyler anticipates that the CMP will require some modification (given Defendants' recently granted motions for a 28-day extension of time to respond to discovery, pushing any discovery responses to mid-April at the earliest, DE #75-76), an indefinite stay of all discovery "could prejudice [Tyler's] ability to develop its case, because the passage of time tends to erode proof of claims and damages." *CMG Worldwide Inc.*, 2018 WL 7140117, at *3. While Defendants appear intent on delaying this case as much as possible, absent any substantiated burden, discovery should proceed to avoid such prejudice to Tyler and the system as a whole. *See U.S. ex rel. Robinson*, 2015 WL 3961221, at *6 ("Districts courts have an important and inherent authority and obligation to control their calendars and ensure that litigation proceeds expeditiously[.]").

## CONCLUSION

For the foregoing reasons, Tyler respectfully requests that this Court deny the Defendants' Motion to Stay Discovery.

---

[8]  Defendants' cited cases on this front (Motion at 8-9) are similarly inapposite. *DSM Desotech Inc. v. 3D Systems Corp.*, No. 08-cv-1531, 2008 WL 4812440 (N.D. Ill. Oct. 28, 2008), dealt with discovery reaching six separate antitrust claims and implicating over eight years of business records. Moreover, in that case, the court was careful to expressly underscore the exceptional nature of a stay and clarify that "the heft costs associated with antitrust discovery is not … tantamount to an automatic prohibition on discovery in every antitrust case where defendants challenge the sufficiency of a complaint." *Id.*  The other case cited by Defendants, *Limestone Development Corp. v. Village of Lemont, III*, 520 F.3d 797, 803 (7th Cir. 2008), has nothing to do with motions to stay discovery and instead addresses pleading standards.

15

        Respectfully submitted,

        <u>/s/ Ann O'Connor McCready</u>
        Ann O'Connor McCready (Ind. Atty. No. 32836-53)
        amccready@taftlaw.com
        Vivek R. Hadley (Ind. Atty. No. 32620-53)
        vhadley@taftlaw.com
        Taft Stettinius & Hollister LLP
        One Indiana Square, Suite 3500
        Indianapolis, Indiana 46204
        Telephone: (317) 713-3500
        Fax: (317) 713-3699

        Jennifer J. Nagle (Mass. Bar No. 669325) (*pro hac vice*)
        jennifer.nagle@klgates.com
        Michael R. Creta (Mass. Bar No. 693340) (*pro hac vice*)
        michael.creta@klgates.com
        K&L GATES LLP
        State Street Financial Center
        One Lincoln Street
        Boston, MA 02111
        Telephone: (617) 261-3100
        Fax: (617) 261-3175

        *Counsel for Tyler Technologies, Inc.*

Dated: March 15, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2021, a copy of the foregoing document titled ***Plaintiff Tyler Technologies, Inc.'s Opposition To Motion To Stay Discovery*** was filed via CM/ECF and served on all counsel of record.

        */s/ Ann O'Connor McCready*
        Ann O'Connor McCready (Ind. Atty. No. 32836-53)