**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

_____

TYLER TECHNOLOGIES, INC.,        )
                                 )
       Plaintiff,               )
                                 )
v.                               )     Case No. 4:20-cv-00173-TWP-DML
                               )
LEXUR ENTERPRISES INC., ROBERT FRY,  )
JIMMY DAVIS, JOE THORNSBERRY,    )
AND JOHN DOES 1-100              )
                               )
       Defendants.            )
_____)

**DEFENDANT LEXUR ENTERPRISES INC.'S MOTION FOR MORE DEFINITE**
**STATEMENT TO ASSESS**
**THE COURT'S JURISDICTION OVER PLAINTIFF'S CLAIMS**

Defendant Lexur Enterprises, Inc. ("Lexur"), by counsel, pursuant to Federal Rule of Civil Procedure 12(e), respectfully requests that the Court order Plaintiff Tyler Technologies, Inc. ("Tyler") to provide a more definite statement as to both (1) the nature of the trade secrets allegedly misappropriated by the Defendants; and (2) the alleged monetary harm suffered by Tyler as a result. A more definite statement regarding these two issues is necessary to determine whether this Court has subject matter jurisdiction over Plaintiff's claims. In support of this Motion, Lexur states:

## I.    INTRODUCTION

Almost one year ago, Tyler filed its Complaint against Lexur and other defendants, accusing Lexur of violating both federal and state antitrust laws. At the time, Tyler asserted that Lexur had improperly won three real estate assessment contracts from certain Indiana counties that

1

cost Tyler close to a million dollars in lost value.  The Defendants moved to dismiss Tyler's claims, arguing that Tyler had not only failed to plead antitrust violations, but that Tyler had affirmatively pled that no such antitrust violations could exist based on the facts.  Tyler opposed the Defendants' motions, as well as their request to stay discovery while the motions to dismiss were decided.  The Court denied the Defendants' motion to stay and, while their motions to dismiss were pending, the Defendants responded to voluminous discovery requests at a substantial cost. As of the date of this filing, Defendants have produced approximately 4,000 pages of documents to Tyler.

On June 29, 2021, the Court granted the Defendants' pending motions to dismiss and dismissed Tyler's original Complaint in its entirety.  Tyler was given leave to file an amended complaint.  On July 9, 2021, Tyler did so.  Based on documents received in discovery, Tyler now alleges that the Defendants misappropriated Tyler's trade secrets, thereby violating the federal Defend Trade Secrets Act ("DTSA") and the Indiana Uniform Trade Secrets Act ("IUTSA").

The Amended Complaint alleges that the Defendants misappropriated trade secrets related to Tyler's provision of assessment services to six Indiana counties.  This is **intra**state – not **inter**state – commerce.  The Amended Complaint is notably vague as to precisely what trade secrets the Defendants purportedly misappropriated.  Tyler's inability or refusal to identify the allegedly misappropriated trade secrets with clarity is significant.  Although the Federal Rules of Civil Procedure follow simple notice pleading standards, the DTSA requires that Tyler establish a nexus between the misappropriated trade secrets and interstate commerce as a jurisdictional requirement.  Failure to do so mandates dismissal of a DTSA claim pursuant to Rule 12(b)(1).

Despite obtaining the documents and information that constitute the purportedly misappropriated trade secrets during discovery, the Amended Complaint is so vague as to the nature of the allegedly misappropriated trade secrets that neither the Defendants nor the Court can

2

ascertain whether there is a sufficient nexus between the misappropriated trade secrets and interstate commerce such that this Court has subject matter jurisdiction.  Moreover, in light of Tyler's reacquisition of the three original "lost" contracts, Defendants do not believe that Tyler can establish damages of over $75,000, as is necessary to establish diversity jurisdiction should Tyler's DTSA claim be dismissed.

Rather than prematurely seek dismissal of Tyler's lawsuit, Lexur requests that Tyler be ordered to provide a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) identifying both (1) the nexus between the specific, allegedly misappropriated trade secrets and interstate commerce; and (2) the amount of Tyler's damages.  The Court and Defendants can then more accurately assess whether jurisdiction is appropriate before this Court.

## II.   BACKGROUND FACTS

Tyler's Amended Complaint alleges that the Defendants, including Lexur, "engaged in a concerted scheme to misappropriate and convert Tyler's confidential business information, trade secrets, and goodwill to maliciously and intentionally interfere with Tyler's public works contracts with various Indiana counties…" (Amended Complaint, Dkt. 96, ¶1).  Tyler further alleges that the Court has subject matter jurisdiction over this lawsuit on two grounds: (1) federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Tyler has pled a claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836; and (2) diversity jurisdiction under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000 exclusive of interest and costs. (*Id.* at ¶¶ 37, 38).

Tyler alleges that the Defendants misappropriated the following "trade secrets:" (1) Tyler's goodwill with the six Indiana counties at issue (the "Counties") (*Id.* at ¶¶10-12); (2) Tyler's salary and compensation strategy information (*Id.* at ¶14); (3) Tyler's project planning calendars, fee,

budget and progress of completion information, and business strategy information regarding Tyler's implementation and pricing of the Contracts (*Id.* at P18); and (4) Tyler's processes for appraising new construction, annual data verification, trending and monthly billing for the counties, Tyler's business plans, and Tyler fee data (*Id.* at P141).

Tyler alleges that the Defendants misappropriated this information for use in the so-called "Rebid Conspiracy," that is the alleged plan to obtain re-bid, out-of-cycle reassessment contracts from the Counties. (*Id.* at PP 2, 10, 11, 68).  This allegedly included convincing the Counties to reissue assessment contracts, terminate their Tyler assessment contracts, and grant the rebid contracts to Lexur.  (*Id.* at P11).  This allegedly also included convincing certain Tyler employees staffing the Indiana county accounts to switch their employment to Lexur and continue servicing the same counties.  (*Id.* at P14).

Despite the Defendants' alleged misappropriation and other alleged misconduct, Tyler ultimately retained all of its assessment contracts with the Counties.  (*Id.* at P26).  Nevertheless, Tyler contends that its unspecified damages exceed the jurisdictional threshold of $75,000.  (*Id.* at PP 26-29, 38).

## III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." The Rule "is the right way to ask plaintiffs to lay out details that enable the defendants to respond intelligently and the court to handle the litigation effectively." *Chapman v. Yellow Cab Cooperative*, 875 F.3d 846, 849 (7th Cir. 2017).  A motion for more definite statement pursuant to Federal Rule of Civil Procedure 12(e) is an appropriate vehicle for addressing potential jurisdictional deficiencies in a plaintiff's complaint.

*See Bank of America Leasing & Capital, LLC v. Global Group, Inc.*, No. 2:10-cv-390, 2011 WL 53088 at *2 (N.D. Ind. Jan. 7, 2011).

## IV.   ARGUMENT

Tyler alleges there are two bases upon which this Court has subject matter jurisdiction over this lawsuit: (1) federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Tyler has pled a claim under the Defend Trade Secrets Act, 18 U.S.C. § 1836; and (2) diversity jurisdiction under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000 exclusive of interest and costs.  (Amended Complaint, Dkt. 96, ¶¶ 37, 38).  Neither the Defendants or the Court, however, are obligated to accept Tyler's word that jurisdiction exists.

The Amended Complaint lacks sufficient specificity to determine whether subject matter jurisdiction exists.  As set forth below, for the Court and Lexur to determine if there is federal court jurisdiction, Tyler needs to provide additional detail regarding both (1) the nature of its trade secret misappropriation claims; and (2) its damages.

### A. Tyler's Amended Complaint Fails to Adequately Allege the Necessary Jurisdictional Basis for its Defend Trade Secrets Act Claim

Tyler alleges that the Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because Tyler has pled a claim under the DTSA, 18 U.S.C. § 1836 *et seq.*  "The DTSA cause of action requires that 'a trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.'"  *DLMC , Inc. v. Flores*, No. 18-00352, 2019 WL 309754 at *2 (D. Hawai'i Jan. 23, 2019) (dismissing lawsuit for lack of subject matter jurisdiction).  The interstate commerce requirement is jurisdictional.  *Government Employees Insurance Co. v. Nealey*, 262 F.Supp.3d 153, 171 (E.D. Pa. 2017) (dismissing DTCA claim for lack of subject matter jurisdiction).  To establish the court's subject matter jurisdiction over a trade secret misappropriation claim, the plaintiff must allege a sufficient "nexus" between interstate or

foreign commerce and the misappropriated trade secrets. *Hydrogen Master Rights Ltd. v. Weston*, 228 F.Supp.3d 320, 338 (D. Del. 2017) (dismissing trade secret claims for lack of subject matter jurisdiction); *see also DLMC, Inc.*, 2019 WL 309754 at *2 (holding that plaintiff failed to connect the dots between interstate commerce and allegedly misappropriated trade secrets).

      1.  <u>The Thrust of Tyler's Amended Complaint Concerns the Alleged Misappropriation of Trade Secrets Related to the Performance of Intrastate Contracts for Real Property Assessment</u>

Despite the benefit of having already received Lexur's written responses to its discovery requests, as well as a substantial document production, Tyler's Amended Complaint is impermissibly vague about exactly what information constitutes the purported trade secrets that the Defendants have allegedly misappropriated. Although trade secret misappropriation claims, including claims under the DTSA, do not have a heightened pleading standard, Tyler still "bears the burden of demonstrating by competent proof that such jurisdiction in fact exists." *Depuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 403 F.Supp.3d 690, 699 (S.D. Ind. 2019) (citing cases).

The degree of "competent proof" required to establish a sufficient nexus between the trade secrets allegedly misappropriated and interstate commerce under DTSA was discussed in exacting detail by the court in *Islands Hospice, Inc. v. Duick*, Civ No. 19-00202, 2019 WL 4620369 (D. Hawai'i Sept. 23, 2019). *Duick* involved claims that the plaintiff's former chief executive officer misappropriated the plaintiff's trade secrets and started a competing hospice care provider. *Id.* at *1. The plaintiff asserted a DTSA claim, as well as state law claims for trade secret misappropriation, unfair competition, and deceptive trade practices. The defendants moved to dismiss the complaint pursuant to Fed. R. Civ. Pro. 12(b)(1) on the basis that the plaintiff had failed to properly allege DTSA's interstate commerce requirement. *Id.* at 2.

In assessing the motion to dismiss, the *Duick* court grappled with the question of how narrowly or broadly to read DTSA's jurisdictional requirement. In doing so, the court drew heavily

on two opinions interpreting the Economic Espionage Act ("EEA"), the criminal analog to the DTSA; *United States v. Aleynikov*, 676 F.3d 71 (2nd Cir. 2012) and *United States v. Agrawal*, 726 F.3d 235, 244-45 (2nd Cir. 2013). The *Duick* court found instructional the *Agrawal* court's conclusion that similar language in the EEA to that in the DTSA demonstrated that "Congress did not exercise its full Commerce Clause authority in the EEA." *Id.* at \*4. Accordingly, the *Duick* court concluded that the DTSA's jurisdiction is narrower than the broadest scope of Commerce Clause authority. In other words, a plaintiff must demonstrate more than that a trade secret relates to some product or service used or intended for use in interstate commerce. *Id.* at \*1.

The *Duick* court ultimately concluded that to establish federal subject matter jurisdiction, to assert a proper DTSA claim:

> [A] plaintiff must plead (i) the existence of a relationship tethering (i.e., "relates to") (ii) the confidential or secret information (i.e., a trade secret) (iii) to a product or service used in, or intended for use in, interstate commerce (i.e., "used in…interstate commerce") to meet the jurisdictional nexus.

*Id.* at \*5; *see also Southern HVAC Corp. v. Konforte*, No. 6:18-cv-1589, 2019 WL 11499349 at \* 1 (M.D. Fla. Jan. 10, 2019) ("[A]s the focus is still on whether the trade secret relates to a *service used or intended for use* in interstate commerce.") (emphasis in original).

Applying that test to the plaintiff's claim, the *Duick* court found an absence of the requisite nexus. The plaintiff first alleged that it met the jurisdictional nexus because it used goods shipped in interstate commerce as part of the program whose trade secrets were allegedly misappropriated by the defendants. *Id.* The court rejected this argument as lacking the nexus – or "tethering" – of the trade secrets to the interstate commerce. "Put differently, what part of the shipping of out-of-state medical supplies is tethered to its secret information? Merely pleading that its Supportive Care program relies on out-of-state products is insufficient." *Id.*

The plaintiff's argument that its "methods, formulas, processes, and procedures for procuring those interstate products are part of its trade secrets" was found to be similarly unavailing. Although the court concluded that such an allegation could satisfy the jurisdictional nexus, the court found that the plaintiff had actually pled that its trade secret was the "valuable business information about the methods, formulas, techniques, processes, procedures, and programs necessary to successfully implement a [the] Supportive Care program." *Id.* In other words, the plaintiff had pled that the misappropriated trade secrets related specifically to the intrastate program at issue.

In light of *Duick*, determining whether there is a sufficient "nexus" between interstate and foreign commerce and the trade secrets allegedly misappropriated by the Defendants is impossible from the allegations pled in Tyler's Amended Complaint. Like the *Duick* plaintiff, Tyler's allegations generally tether the trade secrets to the provision of strictly intrastate services to the Indiana Counties.

Tyler repeatedly alleges that the Defendants misappropriated the "goodwill" established between Tyler and the six southern Indiana counties at issue (the "Counties"). (Amended Complaint, Dkt. 96, ¶¶ 7, 10-12, 15, 54). Goodwill, although it can be a protectible interest for an employer that can serve as the basis of post-employment restrictive covenants, is not a protectible trade secret. *See Standard Register Co. v. Cleaver*, 30 F.Supp.2d 1084, 1094-1100 (N.D. Ind. 1998) (discussing distinction between trade secrets and protectible goodwill). Were "goodwill' the sole basis for Tyler's DTSA claim, Lexur would bring a 12(b)(6) motion rather than this Rule 12(e) Motion.

Tyler does allege that Defendants misappropriated certain, specific documents or information that it contends constitute protectible trade secrets. (Amended Complaint, ¶¶ 14, 18,

19, 50, 89, 90, 141).  The Amended Complaint makes clear, however, that certain alleged "trade secrets" relate to the performance of reassessment services for each of the Counties – a purely intrastate act of commerce.  For example, Tyler alleges:

- "With Tyler's trade secrets in hand, **Lexur used that information to prepare its bids for the Counties**, specifically to prepare a bid that was priced lower than the Contracts, but that Lexur could actually deliver." (*Id*. at ¶ 22) (emphasis added).

- "Having recruited the involvement of Davis and Thornsberry to breach their duties to Tyler, **and having misappropriated and used Tyler's goodwill and trade secrets to prepare itself to actually staff and service the Contracts**…" (*Id*. at ¶ 23) (emphasis added).

- "**The value of Tyler's confidential business information and trade secrets is particularly high as to the Counties** because Tyler has been working with each of them for many years, and has **developed insight and intelligence into the Counties' challenges, preferences and needs**.  That information is not available to others, is maintained and analyzed by **Tyler to maximize its work and productivity for the Counties**, and would give any competitor an unfair advantage if improperly accessed." (*Id*. at ¶ 54) (emphasis added).

- "Shortly after receiving the confidential business information and trade secrets from Davis, **Defendants adapted it for their own purposes and use in the Rebid Conspiracy**.  Muthard sent Fry multiple spreadsheets containing and modifying Tyler confidential business information and trade secrets **for Lexur use [sic] in preparing its responses to the Counties anticipated rebids**." (*Id*. at 68) (emphasis added).

The foregoing illustrate the broader issue with Tyler's DTSA claim; the documents and information that Tyler contends was misappropriated by the Defendants relate entirely to the bidding for, and performance of, cyclical property reassessment contracts for six southern Indiana counties.  There is no "nexus" between the allegedly misappropriated trade secrets and interstate commerce and therefore no jurisdictional basis for Tyler's DTSA claims.

      2.   <u>Tyler Cannot Satisfy the Jurisdictional Prerequisite of Interstate Commerce By Pleading "Upon Information and Belief"</u>

The Amended Complaint at least suggests that some unnamed Tyler trade secrets may (or perhaps not) have been misappropriated by the Defendants (or some of them) and may (or may

not) have been used outside of the purely intrastate commerce related to the performance of real property reassessment in southern Indiana.  Tyler has alleged that: "Upon information and belief, Lexur has continued to use Tyler's trade secret information in connection with other bids for reassessment work in Indiana, Ohio and possibly elsewhere." (Amended Complaint, Dkt. 96, ⁋ 22).  To invoke the subject matter jurisdiction of a federal court, however, jurisdictional allegations need to be made on personal knowledge, not information and belief.  *See Howmedica Osteonics Corp. v. DJO Global, Inc.*, No. 1:17-cv-00938, 2018 WL 3130969 at *1, n.1 (S.D. Ind. March 15, 2018).  Accordingly, paragraph 22 of the Amended Complaint does not satisfy the jurisdictional nexus for a DTSA claim.

       3.   <u>Tyler's Limited Attempts to Provide a Nexus Between the Misappropriated Trade Secrets and Interstate Commerce are Unavailing</u>

The Amended Complaint contains a limited number of allegations that attempt to infer a nexus between the misappropriated trade secrets and interstate commerce, but those allegations are insufficient.  For example, Tyler alleges that: "The Tyler trade secrets at issue include, but are not limited to, information related to Tyler's processes for appraising new construction, annual data verification, trending, and monthly billing for the Counties; Tyler business plans; Tyler fee data; and Tyler compensation and salary strategy information." (Amended Complaint, Dkt. 96, ⁋ 141). Tyler then alleges that it uses "the above-detailed trade secrets in interstate commerce, namely in the provision of reassessment services directed into Indiana and other states." (*Id*. at ⁋ 142).

Although at first blush these allegations appear capable of satisfying the DTSA's jurisdictional requirement of a sufficient nexus between the allegedly misappropriated trade secrets and interstate commerce, a closer look reveals that it is impossible to determine; (1) what trade secrets the Defendants purportedly misappropriated; and (2) the nexus between those trade secrets

and interstate commerce.  The allegations themselves broadly suggest that the "trade secrets" at issue relate to overly broad and impenetrably vague categories such as "business plans," "fee data," and "trending."  More to the point, it is unclear whether these purported trade secrets relate solely to the Counties and intrastate commerce – as suggested by "monthly billing for the Counties" – or relate more broadly to appraisal information in general and therefore implicate interstate commerce.

Tyler based its original Complaint against the Defendant on federal antitrust liability and had those claims dismissed.  In the interim, the Defendants have spent tens of thousands of dollars responding to discovery and otherwise defending now-dismissed claims.  Before heading down that path again, Lexur respectfully requests that the Court ensure that jurisdiction before this Court is appropriate.  Federal courts often grant Rule 12(e) motions where claims are based upon the misappropriation of vague and unspecified trade secrets.  *See Resonance Technology, Inc. v. Koninklijke Philips Electronics, N.V.*, No. CV 08-2580, 2008 WL 4330288 at \*3-4 (C.D. Cal. Sept. 17, 2018) (granting in part motion for more definite statement); *Eberhard Investment Associates, Inc. v. Santino*, No. 01-cv-3840, 2003 WL 22126846 at \*4 (S.D.N.Y. Sept. 12, 2003) (same); *ORP Surgical, LLC v. Howmedica Osteonics Corp.*, No. 1:20-cv-01450, Dkt. 119 (D. Colo. June 10, 2021) (same).

A more definite statement identifying the trade secrets that Defendants have allegedly misappropriated, as well as their nexus to interstate commerce, is appropriate here.  The Defendants are not asking Tyler to identify the trade secrets with such particularity that they lose their trade secrets status (to the extent any exists) via their publication in the pleadings.  Given that Tyler already possesses discovery responses and documents from Lexur, Tyler should be able to articulate the trade secrets at issue and their connection to interstate commerce in such a manner

that the Court and parties can ensure that jurisdiction is proper before this Court.  That is one

purpose of this Motion.

### B. LEXUR DISPUTES THAT THE AMOUNT IN CONTROVERSY EXCEEDS THE JURISDICTIONAL AMOUNT

Tyler asserts that this Court also has subject matter jurisdiction over this lawsuit pursuant

to 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties and the

amount in controversy exceeds $75,000.  (Amended Complaint, Dkt. 96, ⁋ 38).  Lexur disputes

that Tyler can satisfy the amount in controversy requirement.

When Tyler filed its Original Complaint, three of the Counties had awarded new cyclical

reassessment contracts to Lexur.  (Complaint, Dkt. 1, ⁋ 9).  Tyler alleged that the loss of these

three contracts to Lexur would cost Tyler close to one million dollars. (*Id* at ⁋ 10).  Tyler's

Amended Complaint, however, reflects a significant change in circumstances.  As a result of filing

this lawsuit and putting improper pressure on the Counties, Tyler has reacquired the three contracts

it alleged to have lost in its original Complaint. (Amended Complaint, Dkt. 96, ⁋ 26).  Tyler did

not lose any contracts as the result of Lexur's alleged actions.

Nevertheless, Tyler insists that it has suffered unspecified damages as a result of Lexur's

conduct and that these damages exceed $75,000.  (*Id*. at ⁋⁋ 27, 38).  Lexur's Amended Complaint,

however, does not specify the amount of damages it has allegedly suffered.  And despite being

served with Requests for Production of Documents seeking all documents related to Tyler's

alleged damages almost ninety (90) days ago, Lexur has received nothing more than a vague

promise that "Tyler will produce such documents."  It has not.

Where a defendant disputes a plaintiff's allegation of the amount in controversy, the

plaintiff bears the burden of establishing jurisdictional facts by a preponderance of the evidence.

*McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009) (*superseded by*

*statute on other grounds*). A plaintiff facing a challenged jurisdictional amount cannot "simply

point to the theoretical possibility of recovery for certain categories of damages," but "must come

forward with competent proof that they have satisfied the jurisdictional threshold." *Id.*

So must Tyler.  It claims that, despite not losing any business as a result of the Defendants'

alleged actions, it has been damaged in an amount exceeding $75,000.  It must now come forward

with proof of that amount or withdraw diversity as a basis for this Court's jurisdiction over this

lawsuit.

## V.   CONCLUSION

For the foregoing reasons, Defendant Lexur Enterprises, Inc. respectfully requests that the

Court order Tyler Technologies, Inc. to specify both the trade secrets at issue and its alleged

damages with greater specificity pursuant to Federal Rule of Civil Procedure 12(e) and for all other

proper relief.

Respectfully Submitted,

LEWIS WAGNER, LLP


/s/A. Richard M. Blaiklock
A. RICHARD M. BLAIKLOCK
AARON D. GRANT
LEWIS WAGNER, LLP
1411 Roosevelt Avenue, Suite 102
Indianapolis, IN  46201
Phone:  (317) 237-0500
Fax:  (317) 630-2790
rblaiklock@lewiswagner.com
agrant@lewiswagner.com
*Attorneys for Lexur Enterprises, Inc*

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2021, a copy of the foregoing was filed electronically.  Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system.  Parties may access this filing through the court's system.

| | |
|---|---|
| Ann O. McCready<br>Vivek Randle Hadley<br>TAFT STETTINIUS &<br>HOLLISTER LLP<br>One Indiana Square<br>Suite 3500<br>Indianapolis, IN  46204<br>amccready@taftlaw.com<br>vhadley@taftlaw.com | Douglas B. Bates<br>Chelsea R. Stanley<br>STITES & HARBISON PLLC 323<br>East Court Avenue<br>Jeffersonville, IN 47130<br>dbates@stites.comcstanley@stites.com |
| Jennifer J. Nagle<br>Michael R. Creta<br>K&L GATES LLP<br>State Street Financial Center<br>One Lincoln Street<br>Boston, MA  02111<br>jennifer.nagle@klgates.com<br>michael.creta@klgates.com | R. Jeffrey Lowe<br>KIGHTLINGER & GRAY, LLP<br>Bonterra Building, Suite 200<br>3620 Blackiston Boulevard<br>New Albany, IN 47150<br>jlowe@k-glaw.com |
| John H. Haskin<br>Samuel Mark Adams<br>JOHN H. HASKIN &<br>ASSOCIATES, LLC<br>255 North Alabama<br>Second Floor<br>Indianapolis, IN  46204<br>jhaskin@jhaskinlaw.com<br>sadams@jhaskinlaw.com | |

/s/A. Richard M. Blaiklock
A. RICHARD M. BLAIKLOCK

**LEWIS WAGNER, LLP**
1411 Roosevelt Avenue, Suite 102
Indianapolis, IN 46201
Phone:   317-237-0500
Fax:       317-630-2790
rblaiklock@lewiswagner.com